William N. **GURTMAN** and Ida Gurtman, Plaintiffs,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. 997–62.

United States District Court
D. New Jersey.
Jan. 19, 1965.

Gurtman & Schomer, by Aaron Z. Schomer, Passaic, N. J., for plaintiffs.

David M. Satz, Jr., U. S. Atty., and Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, Jr., Peter Ciano, Dept. of Justice, Washington, D. C., for the United States.

WORTENDYKE, District Judge:

This is an action for the recovery of Federal income taxes paid by the plaintiffs, William N. Gurtman (hereinafter Taxpayer) and his wife, Ida Gurtman, for the years 1957 and 1958, amounting to $3,208.62. This Court's jurisdiction derives from 28 U.S.C. § 1346(a) (1) and 26 U.S.C. §§ 7422 and 6532.

At the conclusion of the trial the Court reserved decision pending the receipt of post-trial briefs in behalf of the respective parties. This opinion embodies the Court's findings of fact and conclusions of law, as required by F.R. C.P. 52(a).

The parties orally stipulated, and I find in accordance therewith, as follows:

"* * * one, as a result of an audit made on March 14, 1960, by a field agent of the Commissioner of Internal Revenue of the records of Passaic County Real Estate Units, Inc., the Commissioner of Internal Revenue advised plaintiffs that their 1957 income tax return which plaintiffs had jointly filed within the proper time and on which they had paid their full tax on the basis of the net taxable income reported therein, had been revised by including therein the sum of $7,500 for the reason that the receipt of the said money by plaintiff, William N. Gurtman, from Passaic County Real Estate Units, Inc., was a [sic] dividend income and not loans from said corporation, and assessed an alleged deficiency tax against plaintiff of $2,-381.28.

"2. As a result of the same audit, the Commissioner of Internal Revenue revised the 1958 income tax return of plaintiffs which had been duly filed by plaintiffs and by which they had paid their income tax on the basis of the net taxable income reported therein, by including therein the sum of $1,000 for the reason that the receipt therein by plaintiff, William N. Gurtman, from Passaic County Real Estate Units, Inc., which money had been received by him in 1957 was dividend income and not a loan from said corporation, and assessed an alleged deficiency tax of $331.38.

"4. [sic] On June 28, 1961, plaintiffs paid the United States District Director of Internal Revenue for

the 5th District of New Jersey the sum of $2,381.28, together with interest of $452.83 or a total of $2,834.11 for the alleged deficiencies tax assessed for the year 1957. On June 28, 1961, plaintiffs duly filed a Claim for Refund for the said sum of $2,834.11, and on or about November 23, 1961, the defendant rejected Claim for Refund.

"5. On June 28, 1961, plaintiffs paid the United States District Director of Internal Revenue for the 5th District of New Jersey the sum of $331.38, together with interest of $43.13, or a total of $374.51 in full payment of the alleged deficiency tax assessed for the year 1958. On June 28, 1961, plaintiffs duly filed a Claim for Refund for the said sum of $374.51, and on May 28, 1963, filed an Amended Claim for Refund for said money. The Claim for Refund was rejected by defendant on or about November 21, 1961."

The Government refused to stipulate as to the amount, if any, to be recovered, but left the determination of that amount to later computation.

Besides the stipulation, oral testimony was adduced and exhibits were admitted in evidence from which I further find, as follows:

Taxpayer at all relevant times is and was an attorney at law of the State of New Jersey, with an office in the City of Passaic therein, and the sole stockholder, and owner, of Passaic Real Estate Units, Inc., a New Jersey corporation. Since its incorporation in 1941, taxpayer has been the president, treasurer and a member of the board of directors of the corporation. The other officers thereof are respectively his wife, and the secretary employed in his law office, holding qualifying shares only. Taxpayer has and has had the sole power to sign corporate checks. The principal asset of the corporation is a real estate apartment development in Clifton, New Jersey, and the corporation's principal business is the rental of apartments to individual tenants therein. Its fiscal year extends from July 1 to June 30. The petitioners return their taxes on a calendar year basis.

The basic issue in this case is whether the amounts withdrawn and received by the taxpayer are dividends, and as such income and taxable, or merely loans from the corporation, not income, and thus not taxable. A second question is whether the item of $1,000 of the withdrawals in question was received in the taxpayers' 1957 or 1958 tax year. We recognize that the Commissioner's finding that the withdrawals in question constituted dividends and taxable income, and not loans, is presumptively correct and the taxpayer has the burden of proving the Commissioner's finding wrong, Welch v. Helvering, 1933, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212; G. E. Employees Securities Corp. v. Manning, 3 Cir. 1943, 137 F.2d 637, 638; General Aggregates Corp. v. C. I. R., 1 Cir. 1963, 313 F.2d 25, citing Allen v. C. I. R., 1 Cir. 1941, 117 F.2d 364; Tate v. C. I. R., 8 Cir. 1938, 97 F.2d 658, cert. den. 1938, 305 U.S. 639, 59 S.Ct. 106, 83 L.Ed. 412. Mere denial by a taxpayer is not enough to overcome this presumption of validity which attaches to the determination of the Commissioner, Pinder v. United States, 5 Cir. 1964, 330 F.2d 119, 124. To discharge his burden, the taxpayer must find support in the totality of evidence adduced to overcome this presumption. The Court is called upon to decide whether the evidence suffices to prove the Commissioner's determination unwarranted.

In resolving the question whether or not the corporate payments are dividends or loans, we look to the intention of the parties, C. I. R. v. Makransky, 3 Cir. 1963, 321 F.2d 598, 600, and cases cited. The Commissioner has concluded that the taxpayer's intention, as disclosed by his conduct, in his individual and corporate capacity, impels the conclusion that the payments were dividends. To overcome the Commissioner's determination, the taxpayer has shown that the amounts in question were

regularly entered as accounts receivable in the corporate books; that these books and the related financial statements and tax returns reflected the existence of the withdrawals as loans; that he repaid about $4,000 of similar withdrawals between 1944 and 1947; and that he repaid, prior to Government audit, about one-quarter of the withdrawals made after 1947. He has also testified that he always considered the withdrawals as loans, and recognized an obligation to repay them to the corporation. This evidence is not sufficient to overcome the presumption that the Commissioner's determination is correct where the following objective indications of taxpayer's intent show, in sum, a lack of any definite intention to repay, e. g., no notes or other written acknowledgment of indebtedness were executed by the taxpayer to the corporation in connection with these withdrawals; no interest upon these withdrawals was charged by or paid to the corporation; no collateral was given to the corporation by the taxpayer to secure repayment of any of these withdrawals; and no method of, nor time for, repayment were fixed by any agreement, oral or written, between the corporation and the taxpayer. Moreover, it was not until well after the audit of the taxpayers' account by the Internal Revenue agent in 1960, some five years after the date of the last previous repayment, that any repayments were made subsequent to the 1957 withdrawals. By the time of these repayments in 1961, the withdrawals had grown (over some thirteen years) to a total of $48,992.95. At the end of the corporation's fiscal year in 1961 the repayments by the taxpayer during those thirteen years (including the 1961 post-audit payments of $3,500) totaled $13,744.11 and there was then outstanding as "loans" $35,248.84. The taxpayer testified that he was always able to repay the loans and so the persistent non-payment was of his own choosing.

Some of the above factors have been specifically relied upon as indicating the lack of any intention to repay when other courts have been confronted with similar questions respecting corporate payments to stockholders. See Spheeris v. C. I. R., 7 Cir. 1960, 284 F.2d 928, cert. den. 1961, 366 U.S. 944, 81 S.Ct. 1673, 6 L.Ed.2d 855; Clark v. C. I. R., 9 Cir. 1959, 266 F.2d 698; Regensburg v. C. I. R., 2 Cir. 1944, 144 F.2d 41, cert. den. 1944, 323 U.S. 783, 65 S.Ct. 272, 89 L.Ed. 625; Chism's Estate v. C. I. R., 9 Cir. 1963, 322 F.2d 956.

In addition to all of the above factors contra the taxpayers' argument, the weight of taxpayer's asserted intention to repay to the corporation the amounts of his withdrawals therefrom is not enhanced by the uncontroverted fact that although from time to time during the period over which the withdrawals took place he had occasion to apply to certain lending institutions for loans to himself individually, it was not until December 6, 1960 that his applications disclosed his recognition of any liability to his own corporation, and that liability was characterized in his proffered financial statement as "contingent", but otherwise not explained. Indeed, upon the lines provided in the statements for the disclosure of his liabilities the word "None" was entered. Additionally, the corporate financial statements dated July 13, 1961 which were submitted to the corporation's banking institution failed to list as loans receivable by the corporation from the taxpayer any portion of the amounts withdrawn by him, even though there was a line on the statement for amounts "Due from Officers and Employees".

The taxpayer, in rebuttal, makes much of a letter dated March 9, 1960 in which he acknowledges an obligation to repay the "loans". The impact of any inference as to intent deducible from this letter is weakened by the fact that at this time it was to Gurtman's benefit, in his corporate relationship, to emphasize all the assets of the borrowing corporation.

In sum, the above facts, together with the completeness of the taxpayer's control of the corporation and its cash, and the obviousness of his treatment of its funds as his own, are strongly corrobora-

-tive of the Commissioner's finding that -enforceable loans were not intended.

Having determined that the withdrawals during the years may reasonably be denied characterization as loans, we reach the further question whether they should be treated as dividends. For purposes of income tax upon the recipient of corporate distributions, "dividend" is defined in 26 U.S.C. § 316(a) as "any distribution of property made by a corporation to its shareholders—(1) out of its earnings and profits accumulated after February 28, 1913, or (2) out of its earnings and profits of the taxable year * * *, without regard to the amount of the earnings and profits at the time the distribution was made." The taxpayer submits two arguments in this regard: (1) there were never any formal dividend declarations and (2) if the payments in question are dividends, the remainder of the $48,992.95, withdrawn in prior years, must be similarly considered, and such earlier dividends would have depleted the corporation's previous earnings and profits to such an extent that, since income during fiscal 1957 was nominal, there would have been no "earnings and profits" from which the corporation could pay "dividends" in fiscal 1957 or 1958.

■ The first argument is met and disposed of by the reasoning behind the following statement in the Makransky case, supra, 321 F.2d 598, at p. 601:

" * * * The Internal Revenue Code defines 'dividend' in language requiring the satisfaction of four criteria: There must be (1) a 'distribution' of property (2) 'made by a corporation' (3) 'to its shareholders' (4) 'out of its earnings and profits.' * * * *It should be observed that these criteria do not include a requirement that the distribution be made pursuant to a formal declaration of a dividend. Informal withdrawals and distributions, although characterized by the parties as other than dividends, must be taxed as dividends if the statutory criteria are met.*" (Emphasis supplied.)

The taxpayer's second argument is found in his insistence that the Government must treat the corporate payments made in the years 1947 to 1956 inclusive in the same manner as those in the year 1957. This argument falls because it subsumes that the previous treatment of the withdrawals as loans precludes the proper taxation of withdrawals made in later years. Only the character of the payments that occurred during the corporation's 1957 and 1958 tax years is presently in issue, and the cumulative fact of non-repayment of the so-called loans in prior years may have been considered by the Commissioner in determining the status of the withdrawals during the years here in question. The same circumstances, by their persistence, may constitute a factual basis different from that upon which the Government reached its earlier determination. Furthermore, in the Regensburg case, supra, 144 F.2d 41, the Commissioner was held justified in treating as dividends certain payments which he had previously characterized as loans in valuing the corporation's stock held in the estates of two deceased stockholders.

■ To the extent that the taxpayer's argument asserts estoppel, it is well established that the failure of the Commissioner to question withdrawals by the taxpayer from his corporation during other tax years can work no estoppel *against the defendant in this case.* Burnet v. Porter, 1931, 283 U.S. 230, 51 S.Ct. 416, 75 L.Ed. 996; Sherwin v. United States, 9 Cir. 1963, 320 F.2d 137, cert. den. 1964, 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420, reh. den. 1964, 376 U.S. 946, 84 S.Ct. 796, 11 L.Ed.2d 771; Broadhead v. C. I. R., 5 Cir. 1958, 254 F.2d 169.

■ Taxpayer's final argument, however, is valid. The $1,000 payment that the Commissioner asserts was received by the taxpayer in his 1958 tax year (calendar year 1958) appears in fact to have been received by the taxpayer in 1957. The evidence clearly indicates that the $1,000 payment was made early in the *corporation's* 1958 tax year (*fiscal*

**538**

1958) but still in calendar year 1957, the plaintiffs' 1957 tax year. The Commissioner relies only upon the otherwise unsupported report of the revenue agent to rebut the evidence adduced upon the trial.

I find that the plaintiffs in this case have received the challenged withdrawals, aggregating $8,500, in 1957, but they have failed to discharge the burden cast upon them of overcoming, by the preponderance of the evidence, the presumptively correct determination of the Commissioner that the withdrawals received by taxpayer during the corporation's 1957 and 1958 tax years were taxable to plaintiffs as dividends for their 1957 tax year.

Judgment consistent with the above findings will be entered in favor of the defendant, the United States of America, and against the plaintiffs, William N. Gurtman and Ida Gurtman, dismissing the complaint with prejudice, and with costs. Submit order accordingly.