EDMUNDO B. FERNÁNDEZ, Plaintiff and Appellant, v. SECRETARY OF THE TREASURY OF PUERTO RICO, Defendant and Appellee.

No. R-63-291.     Decided November 17, 1967.

*Félix Ochoteco, Jr.* and *Luis R. Polo* for appellant. *J. B. Fernández Badillo, Solicitor General, Manuel Tirado Viera,* and *Peter Ortiz, Assistant Solicitors General,* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The question in issue here is the nature, for the purpose of imposing income tax, of withdrawals of funds made periodically by the president and chief stockholder of a corporation, and charged to his personal account. The taxpayer maintains that such withdrawals should be considered as loans made by him from the corporation;[1] the Secretary of the Treasury, with whom the trial court agreed, maintains that it is a question of informal and disguised dividends which constitute taxable income during the years they were received. As it usually happens in a transaction subject to a different tax treatment, the particular facts surrounding it are decisive in the final determination of the matter. Let us turn to them.

Edmundo B. Fernández, Inc., is a close family corporation, the capital stock of which is held by appellant, Edmundo B. Fernández, who controls about 60 percent of the outstanding shares, and by his seven sons, who hold equal shares in the remainder. The corporate business consists of

---

[1] Section 403 of the General Corporation Law in force, 14 L.P.R.A. § 1403, proscribes the granting of loans to officers and directors of corporations, except in the case of those having a limited number of stockholders.

the manufacture of Santa Ana aromatic alcohol and Barrilito rum, activities in which Mr. Fernández was personally engaged for many years prior to 1952, when the incorporation took place. Since then appellant is the president and main executive of the entity, for which services he has an annual salary of $18,000. The corporation has always determined annual profits in its operation, although a dividend in cash has never been declared, a surplus being accumulated subject to distribution, which at the end of 1960 amounted to about $130,000.

On January 1, 1957, the personal account of Mr. Fernández revealed a debit balance of $40,362.08. During the four subsequent years he continued making periodical withdrawals to meet his personal obligations, and at the end of the fiscal year the aforementioned annual salary was credited to him. The following table shows a summary of his personal account:

| Year | Debits | Credits | Annual Balance | General Balance |
|------|--------|---------|----------------|-----------------|
| 1956 | | | | ($40,362.08) |
| 1957 | $19,160.00 | $18,000 | ($1,160.00) | ($41,522.08) |
| 1958 | $ 9,850.82 | $18,000 | $8,149.18 | ($33,372.90) |
| 1959 | $11,972.30 | $18,000 | $6,027.70 | ($27,165.30) |
| 1960 | $54,596.16 | $18,000 | ($36,596.16) | ($63,761.46) |

Upon making the withdrawals, appellant did not sign any document in behalf of the corporation; the checks generally issued in his name did not reveal the specific item of the withdrawal; he did not pay interest nor was it charged to him; the credits were limited to accrediting in the books the amount of his annual salaries; the creditor corporation did not take any steps to recover the money during the years in which this situation prevailed. It is proper to note that no evidence was introduced, either by copies of the minutes of the corporation or in any other way, to justify such an unusual conduct.

■ 1. The most important factor in the solution of the problem we are confronting is the intent with which the withdrawals were made, and more concretely, whether at the time they were made it was intended to repay them to the corporate assets. In this respect it is indicated in I Mertens, Law of Federal Income Taxation, § 9.21 (1962 ed.), that the following are important circumstances to be considered (1) when a closely-held or family corporation is involved, the degree of control of the stockholder; (2) the proportion of withdrawals to stockholdings in the corporation; (3) whether notes or other documents have been executed to evidence the debt; (4) whether interest has been agreed upon, charged or paid; (5) whether credits have been made to the principal; (6) whether, despite there being available surplus, dividends in cash have not been declared. See also, Prentice Hall, Federal Taxes Income Tax 9031–32, § 9062 (1966); Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders 166–167 (2d ed.); *Oyster Shell Products Corporation* v. *C.I.R.*, 313 F.2d 449 (1963); *C.I.R.* v. *Makransky*, 321 F.2d 598 (1963); *Gurtman* v. *United States*, 237 F.Supp. 533 (1965); *Robert W. Pashby*, 66,132 P-H Memo TC (1966); *Estate of Robert A. Goodall*, 65,154 P-H Memo TC (1965); *L. D. Lansdale, Jr.*, 65,133 P-H Memo TC (1965); *Vuono-Lione, Inc.*, 65,096 P-H Memo TC (1965); *Curtis Blisinger*, 64,331 P-H Memo TC (1964); *Edwards Motor Transit Co.*, 64,317 P-H Memo TC (1964); *Chesapeake Manufacturing Co., Inc. et al.*, 64,214 P-H Memo TC (1964); *Bernard Schwartz*, 63,340 P-H Memo TC (1963); Werner, *Stockholder Withdrawals— Loans or Dividends?*, 10 Tax L. Rev. 569 (1955).

■ Applying this set of rules to the facts in the present case, we are constrained to hold that it is not a question of loans to a stockholder, but rather of disguised dividends. As we set forth, the appellant paid no interest, nor made partial payments except the accreditation of his salaries, nor

executed documents to evidence the debt. Although the corporation was prosperous, dividends in cash were not declared.[2] The fact that in some years the withdrawals did not exceed the amount of the salaries does not overrule this conclusion, since the evidence reveals a systematic pattern of conduct which goes way back to the beginnings of the corporation, which has been continued, and which, after all, shows a debit balance. Precisely, because it is a family corporation, the fact that the withdrawals are not in a substantial ratio to the taxpayer's stockholdings is not controlling, cf. *Central Igualdad, Inc. v. Sec. of the Treasury*, 83 P.R.R. 44, 55 (1961). More sensational is the fact that the withdrawals were made at the discretion of the chief stockholder and president of the corporation.

2. A withdrawal of $25,000 made on June 21, 1960, used to acquire a parcel of 2.50 cuerdas by purchase from Demetrio Latoni, requires separate consideration. On the previous November 20, at the annual meeting of the stockholders, appellant Fernández had been authorized to make the deal in his name in order to transfer it later to the corporation. The minutes read: "Before the meeting was adjourned, stockholder Edmundo B. Fernández reports that he has agreed to purchase the properties belonging to Demetrio Latoni, adjacent to those of this corporation, and that because of special considerations of the transaction the corporation cannot directly make the purchase, for which reason he requests the Board's authorization to purchase them in his name, and then, after some time, to transfer them to the corporation and for that purpose he requests the corporation to authorize him to withdraw funds for such purposes. Considering the reasons set forth . . . and said property being necessary for the extension of the corporation's business . . . it was approved . . . to authorize the withdrawals of fund

[2] On November 20, 1959, the surplus amounted to $126,198.29. On that date a stock dividend was authorized up to the sum of $100,000.

(*sic*) of the corporation by Mr. Fernández to be charged to his account, for the purposes aforementioned."

By deed No. 16 of January 21, 1960, executed before Notary José R. Fournier, after the proper segregation, the sale was carried out and recorded on May 19, 1961. The price of $26,000 was paid by a check for $25,000 issued in favor of Demetrio Latoni, against the checking account of the corporation in the First National City Bank of New York, stating that it was for the "Purchase of old house 'Santa Ana' and parcel of 2 1/2 cuerdas (charged to Edm. B. Fernández' personal account)" and the remaining $1,000 was kept by the purchaser as the price of a parcel of one-half cuerda sold by Fernández to Latoni. On January 3 of the following year the taxpayer segregated a property of 5.05 cuerdas which included the 2.50 cuerdas acquired from Latoni, and transferred it to the corporation for the price of $37,000 which was declared as received prior to the execution, but which according to the testimony given at the trial was accredited to appellant's personal account.

The trial court upon analyzing the transaction believed that the long period of time elapsed between the approval by the Planning Board on January 27, 1960, of the segregation of the 2.50 cuerdas and the conveyance to the corporation, controverted the explanation offered by the taxpayer—"difficulties with the Planning Board"—to acquire in his name the aforementioned parcel.[3] But a careful study of the

---

[3] The trial court said:

"Plaintiff alleged that the transaction was not directly made with the corporation because there were difficulties with the Planning Board. No evidence other than his own testimony was offered by plaintiff to support his statement. It appears from plaintiff's Exhibit No. 2 that the Planning Board approved the segregation of two and a half cuerdas of Latoni's farm on January 27, 1960. That was a little more than two months after the purchase of the land was approved by the stockholders of the corporation. The deed of segregation, sale, and consolidation of the parcels of one-half cuerda and two and a half cuerdas was executed on January 21, 1960, six days before the Planning Board approved the

documentary evidence in the record does not support. this view of the trial judge. Apparently it was understood that the difficulty. consisted in obtaining the approval of the segregation. It was not considered that the approval was expressly subject to the condition that because the segregated parcel of 2.50 cuerdas lacked access to a public road, it should be consolidated with the adjoining farm which was the personal property of appellant Fernández.[4] It is clear that despite the fact that the Planning Board had taken action, the parcel could not be directly conveyed to the corporation in view of the aforesaid sine qua non condition of consolidation. Precisely, in order to evade the provision of the Planning Rules which requires its intervention when the segregation is less than five cuerdas, 23 R.&R.P.R. §§ 10–1 and 10–3, it is that Fernández then segregates 5.05 cuerdas and transfers them to the corporation. Moreover, the survey of this last parcel was not prepared until September 17, 1961. It may be granted that all this procedure was not carried out with the desirable promptness. It is explained by the relation existing between the parties and

---

segregations proposed by plaintiff and Latoni, nevertheless, in that deed the notary mentions said approval. Witness José Rodríguez Collazo testified that as of December 31, 1961, there was nothing in the Planning Board with respect to difficulties concerning the segregation of the two and a half cuerdas of Latoni's farm. That testimony was not rebutted in any manner. If this is so and the Planning Board approved the segregation on January 27, 1960, it is difficult to see where the problem of difficulties in obtaining the segregation in the Planning Board lies. We note from the deed of sale of the two and a half cuerdas segregated by Latoni, which was executed on January 21, 1960, that there was no reason, in view of the approval by the stockholders of the purchase of said land on November 20, 1959, why the conveyance and consideration was not made directly from Latoni to the corporation."

[4] The corporation's property was separated from the parcel of 2.50 cuerdas by a private road called Santa Ana. From the transcript we have not been able to determine with certainty to whom said road belongs, whether to Fernández or to Central Juanita, Inc., or whether it constitutes the right of way in favor of Central Juanita, Inc., to which the title documents refer.

by the informality which necessarily permeates family corporations. We are fully satisfied that we would unjustly penalize appellant if we would hold that this withdrawal of $25,000 constituted a disguised dividend when the impression which prevails after examining all the circumstances is that his intention and purpose was to propitiate a corporate agreement.

The judgment rendered by the Superior Court, San Juan Part, on November 14, 1963 will be modified in order to exclude the amount of $25,000 charged against appellant as disguised dividend in the year 1960, and as thus modified, it will be affirmed.

