The CHAMPAIGN REALTY CO.,
Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 3629.

United States District Court,
S. D. Ohio, W. D.

Jan. 20, 1971.

Robert E. Harley, Springfield, Ohio, for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson, Lawrence J. Ross, Attys., Dept. of Justice, Washington, D. C., William W. Milligan U. S. Atty., for defendant.

## MEMORANDUM OPINION AND JUDGMENT

WEINMAN, Chief Judge.

This is a tax refund action wherein the plaintiff, The Champaign Realty Co., seeks to recover the sum of $2,965.64, representing federal corporate income taxes paid for the years 1962, 1963 and 1964 and the sum of $634.61 representing interest paid thereon plus statutory

interest. This sum resulted from a deficiency assessed by the Commissioner of Internal Revenue as a result of the disallowance of a deduction for accrued interest on certain alleged debentures held by the corporate shareholders and the father-in-law of one of the shareholders.

The sole issue raised by this case is whether the advances to the plaintiff corporation as evidenced by debentures represent contributions of capital or were loans. If the advances were loans, as claimed by plaintiff, plaintiff is entitled to deduct the accrued interest thereon pursuant to 26 U.S.C. § 163(a) in computing its federal income tax liability. If the advances as evidenced by the debentures are contributions of capital, as urged by the defendant, the plaintiff is not entitled to deduct the accrued interest thereon and the deficiency assessed by the Commissioner must be upheld.

This action was submitted by the parties to this Court for determination on a stipulation of facts, documents and the depositions of plaintiff's legal adviser and accountant.

## STATEMENT OF FACTS

The plaintiff is an Ohio corporation organized in 1958 by a group of eight doctors for the purpose of constructing and maintaining a modern medical building in which the shareholder-doctors would lease office space. The medical building was constructed during the years 1958 and 1959 and since 1960 has been operated by the plaintiff corporation.

The acquisition cost of the land, building and equipment amounted to $227,000.00. This sum was raised by loans totalling $112,000.00 from four local financial institutions, advancements of credit by the contractor of $21,000.00, stock sale amounting to $36,000.00 and by sale of the alleged debentures amounting to $57,000.00.

The shareholders of the plaintiff corporation are eight doctors who lease space in the medical building. At the time the corporation was organized it was decided that voting control over the corporation would be divided among the shareholder doctors in accordance with the size of the suite occupied by each doctor. Three hundred sixty shares of common stock were issued. Doctors Miller, Towle, Pond, Frederick, Bohl, Grogan and Richards who occupied suites of equal size each purchased 40 shares at a price of $100.00 per share. Dr. Lowry, who occupied a suite twice as large as the others, purchased 80 shares at a price of $100.00 per share.

The four financial institutions made loans as follows:

| | |
|---|---|
| Champaign National Bank of Urbana, Ohio | $20,963.00 at 5½% interest |
| Citizens National Bank of Urbana, Ohio | $20,963.00 at 5½% interest |
| Peoples Savings and Loan Company | $41,926.00 at 5½% interest |
| Perpetual Federal Savings and Loan Association | $41,926.00 at 5½% interest |

To secure these loans the plaintiff corporation was required to furnish to the four lending institutions (1) real estate mortgages on all of the corporation's property (2) mortgage redemption insurance on the corporation's property (3) assignment of the leases of the occupying tenants, which leases were required to be coterminous with the period of institutional loans and (4) fire and extended coverage insurance on the building for the benefit of the lending institutions.

The alleged debentures were purchased by the shareholders in accordance with their ability to pay. The older doctors purchased more than the younger doctors. During the years in suit the debentures were held by the shareholders in the following amounts:

| | |
|---|---|
| Dr. Lowry | $19,000.00 |
| Dr. Miller | 9,000.00 |
| Dr. Pond | 6,000.00 |
| Dr. Frederick | 4,000.00 |
| Dr. Bohl | 5,000.00 |
| Dr. Grogan | 5,000.00 |
| Dr. Richards | 3,000.00 |

In addition to the shareholder-doctors, Mr. N. N. Sams, the father-in-law of

Doctor Towle, purchased alleged debentures in the amount of $6,000.00 for the purpose of helping his son-in-law, a doctor tenant, carry his share of the load.

Each alleged debenture had a maturity date of December 15, 1973 unless prior thereto it was called for redemption by the corporation and bore interest at a rate of 5% per annum payable in quarterly installments.

The rights of the holders of the alleged debentures were made superior to the rights of common stockholders but were subordinated to the rights of all creditors including creditors who advanced credit subsequent to the issuance of the debentures. A holder of a debenture possessed no individual right to enforce payment of interest or principal upon default. The debenture instrument provided that if the interest upon such debentures is in arrears and unpaid for a period of two years or more or in the event of default in the performance or observance of any of the covenants or conditions therein contained, the entire principal amount would become immediately due and payable at the election of the holders of seventy-five (75%) percent or more of the principal amount of the debentures. The holders of seventy-five (75%) percent of the principal amount were authorized to appoint one of their number as a trustee to maintain a suit to enforce the rights of the debenture holders.

The capital structure of the corporation was arranged so that a group of persons who hold seventy-five (75%) percent of the principal amount of the debentures must include at least a majority of the common shareholders. The seven shareholders who held 320 shares of common stock out of an issue of 360 shares held alleged debentures in the amount of $51,000.00 or approximately eighty-nine (89%) percent of the principal amount of $57,000.00.

No sinking fund was established by the plaintiff corporation to provide funds for repayment of the alleged debentures.

From the time the debentures were issued in 1958 and 1959 through the years involved in this suit, no interest has been paid to the debenture holders but the plaintiff corporation as an accrual basis taxpayer has taken a deduction on its corporate income tax return each year for interest due on the alleged debentures. The holders of the debentures have not had to report any of the alleged interest as income on their personal income tax returns. The corporation has not paid any dividends.

Although the plaintiff corporation had been in default in the payment of interest, none of the debenture holders have sought to exercise their rights as a group to enforce the obligation to pay interest or sought to accelerate the repayment of principal upon the plaintiff's default.

The ratio of the alleged debentures to admitted equity was 1½ to 1. The ratio of total debt, including the alleged debentures to admitted equity was 5½ to 1.

On the balance sheets submitted to the Internal Revenue Service by the plaintiff corporation on its income tax return for the taxable years ended December 31, 1963, 1964 and 1965 the taxpayer did not list the alleged debentures as liabilities under the category "Loans from Stockholders" but included the alleged debentures with other corporate liabilities under the category "Mortgages, notes, and bonds payable in 1 year or more."

## DISCUSSION OF LAW

■ The sole question raised by this action is whether the advances to the plaintiff corporation as evidenced by the alleged debentures are legitimate loans for federal tax purposes. In order to recover, plaintiff has the burden of showing that a legitimate debtor-creditor relationship existed between the corporation and the holders of the alleged debentures. Obermeyer v. United States, 262 F.Supp. 421 (S.D.Ohio W.D.1966).

In resolving this issue the Court must evaluate the evidence as stipulated by

the parties to see if the objective criteria normally associated with legitimate debts are present in this case. Austin Village, Inc., v. United States, 432 F.2d 741 (C.A. 6, 1970), decided September 29, 1970.

■ In the absence of objective criteria normally associated with a legitimate debt, the intention of the parties to create a debtor-creditor relationship is not controlling. In the case of Donisi v. Commissioner of Internal Revenue, 405 F.2d 481, 483 (C.A.6, 1968) the Court of Appeals for the Sixth Circuit stated:

"Although the intention of the [parties] is weighed heavily in determining whether the advances are loans, * * * the intention of the [parties] 'can appropriately be viewed with some diffidence unless supported by other facts which bring the transaction much closer to a normal arms-length loan.' Berthold v. Commissioner [of Internal Revenue] [404 F. 2d 119, 122 (6th Cir. 1968)] * * * This Court has recently stated that important proofs of such intent are the arrangements concerning the normal security, interest and repayment or efforts to secure the same."

In the recent case of Austin Village, Inc. v. United States, supra the Sixth Circuit determined on the basis of objective factors that certain advancements to a corporation were capital investments, not legitimate loans stating:

"* * * we have analyzed the factors relevant to a determination whether the advances here constituted genuine loans, and have concluded that any finding other than that the advances represented capital investments would be clearly erroneous. The maturity dates and interest rates assigned to the alleged loans were, at best, illusory and in fact no interest payments or payments of principal had been made at the time this litigation commenced. Moreover, there was no *unconditional* promise to repay the loans, no fixed schedule of payments, no security and no sinking fund to pro-

vide funds for repayment. Also, it is significant that the putative loans were subordinated to the claims of all other creditors and were the result of the shareholders' inability to obtain sufficient conventional financing for the project."

■ In summary the controlling objective factors establishing the existence of a legitimate loan for federal tax purposes are (1) a fixed maturity date and interest rates (2) an unconditional promise to repay the loan (3) a fixed schedule of payments (4) normal security (5) a sinking fund to provide funds for repayment of the loan and (6) lack of subordination of the loans to the rights of other creditors.

■ An analysis of the facts of the present case in terms of these controlling objective factors demonstrates that the alleged debentures lack the characteristics of legitimate loans.

The debentures have some of the formal characteristics of legitimate loans. The alleged debentures state a fixed maturity date of December 15, 1973 and provide for the payment of interest at a rate of 5% per annum. However, the restrictions imposed upon the right of an individual debenture holder to enforce the "obligation" to pay interest or to repay principal on the maturity date as a practical matter nullifies the former obligation to pay interest and repay principal.

Each debenture provides that "No holder or holders of less than seventy five (75%) percent in the principal amount of the debentures shall have the right to commence suit or obtain judgment thereon." A suit can only be brought if interest is in arrears for two or more years and then in that event only upon the consent of seventy-five (75%) percent or more of the holders in the principal amount of the debentures. Thus an individual debenture holder possesses no right to compel payment of interest, to accelerate the repayment of principal upon default or to compel repayment of the principal on the maturity

date. See Fellinger v. United States, 238 F.Supp. 67, 75–76 (N.D.Ohio E.D.1964) aff'd 363 F.2d 826 (C.A. 6 1966).

It is also significant that the percentage of holders required to enforce the "obligation" created by the debentures necessarily includes a majority or more of the corporate shareholders. There is an identity of interest between the debenture holders whose consent is required to enforce the debentures and the corporate shareholders which dispels the existence of a legitimate debtor-creditor relationship.

Plaintiff relies upon the fact that one debenture holder, Mr. N. N. Sams is not a corporate shareholder. This fact is not significant because Mr. Sams, the father-in-law of a shareholder-doctor, purchased debentures to enable his son-in-law to carry his share of the load. Mr. Sams as an individual debenture holder has no right to compel payment of interest or to compel repayment of principal on the maturity date without the consent of other debenture holders who are also shareholders of the corporation. Furthermore, assuming Mr. Sams possessed an individual right to commence suit to enforce the debenture "obligations" it is highly unlikely that he would exercise this right against the interest of his shareholder son-in-law.

Thus the alleged debentures are similar to the notes considered in Austin Village, Inc. v. United States, supra in that:

"The maturity dates and interest rates assigned to the alleged loans were, at best illusory, and in fact no interest payments or payments of principal have been made at the time the litigation commenced."

The alleged debentures lack other characteristics of legitimate loans. The absence of an individual right by a holder to enforce his debentures and conditioning enforcement upon the consent of a group of holders consisting of a majority of corporate stockholders negates the existence of an unconditional promise to repay principal. None of the individual holders possessed a right to demand payment unconditionally at a fixed time. Furthermore, no sinking fund is maintained by the plaintiff corporation to provide funds for the repayment of principal and unlike a legitimate loan, the debentures are unsecured and subordinated to the rights of all corporate creditors including those who advance credit after the issuance of the debentures.

The conclusion of this Court that the alleged debentures are not legitimate loans is further supported when the alleged debentures are compared with the loans made to the plaintiff by the four financial institutions. The loans from the financial institutions were evidenced by notes which provided for the current amortization of principal, contained the right to accelerate repayment of principal upon default on interest payments and contained a confession of judgment clause. The notes were secured by a real estate mortgage on the real property of the corporation and by the assignment to the financial institutions of ten year leases signed by the shareholder-doctors. In addition the plaintiff was required by the financial institutions to maintain mortgage redemption insurance on the life of each shareholder-doctor and to maintain fire and extended coverage insurance for the benefit of the financial institutions.

In contrast the debentures do not afford the holders with normal creditor safeguards. There is no provision for the current amortization of principal. A holder possesses no individual right to compel interest payments upon default or to compel repayment on the maturity date. Enforcement as a practical matter is contingent upon the consent of a group of holders which includes a majority of the corporate shareholders. The debentures are unsecured and subordinated to the rights of all corporate creditors. Thus the debentures in fact resemble a capital contribution in that the debentures are subject to the primary risks of the corporate enterprise. Repayment is solely dependent upon the future earnings of the corporation.

It is also significant that the sum of $57,000.00 advanced to the corporation by the purchase of the alleged debentures was essential to the acquisition of the corporation's primary capital asset, the medical building. In the case of Lockwood Realty Co. v. Commissioner, 17 T.C.M. 247, 251 (1958), affirmed per curiam 264 F.2d 241 (C.A.6, 1959) the Tax Court stated:

"When the organizers of a new enterprise arbitrarily designate as loans the major portion of the funds they lay out in order to get the business established and underway, a strong inference arises that the entire amount paid in is a contribution to the corporation's capital and is placed at the risk of the business. (citing cases)."

Plaintiff places strong reliance upon the decision of the Court of Appeals for the Fifth Circuit in the case of Tomlinson v. 1661 Corporation, 377 F.2d 291 (C.A.5, 1967) in which the Court held that money advanced by stockholder-doctors to a corporation formed by them to operate a professional building constituted a legitimate loan. There are similarities between the 1661 Corporation case and the present case in that money advanced was evidenced by 5% debentures, there was a stated interest rate and maturity date, there was a provision for regular payments of interest but no interest was paid, there was a requirement for acceleration of principal upon default, and there was no restriction upon transferability of the alleged debentures and no sinking fund was maintained. However, in determining a debt-equity case each individual case must be judged on its own unique fact situation. The Court must look beyond formal appearances to determine whether in fact a bona fide debtor-creditor relationship exists.

The case of Tomlinson v. 1661 Corporation, supra is distinguishable on its facts from the present case. First of all in the Fifth Circuit case the rights of the debenture holders were subordinated to the claims of secured creditors but were equal to the rights of general creditors and the debentures were secured by a lien upon all lease rentals not pledged as security for mortgage loans. In contrast the alleged debentures herein are totally subordinated to the claims of all secured and general corporate creditors including those who advance credit after the issuance of the alleged debentures. Thus the alleged debentures herein unlike the debentures considered in Tomlinson v. 1661 Corporation, supra are totally subjected to the primary risks of the corporate enterprise.

The Court in Tomlinson v. 1661 Corporation, supra expressly recognized that complete subordination is a significant factor showing the absence of a bona fide debt when it stated at page 298:

" * * * The factor of subordination also serves to distinguish this Court's recent holding in United States v. Snyder Brothers Co., supra. There it was expressly provided that the debentures would 'be subordinated to *all* indebtedness of the corporation, whether already incurred or *to be incurred at any time in the future,*' (emphasis added) with no limit on the amount of such indebtedness. 367 F. 2d [980] at 981. Clearly such a provision weighs heavily toward an equity participation and against the existence of a bona fide debtor-creditor relationship.[16] "

Furthermore, the debentures considered in Tomlinson v. 1661 Corporation, supra, gave the holders a definite individual right to enforce payment whereas the individual holders of the "debentures" issued by plaintiff have no mean-

16. "The Government correctly observes that the 'willingness to subject his investment to the primary risks of the enterprise is what distinguishes the stockholder from the creditor.' 4A Mertens, Federal Income Taxation § 26.06, at 35 (1966 Revision). Thus, a creditor ordinarily will insist on sharing with other creditors in the assets of the business in the event of liquidation or dissolution. This was precluded by the subordination provision in *Snyder Brothers*."

ingful right of enforcement. In fact a single debenture holder has no individual right to enforce payment. Enforcement is expressly made contingent upon the consent of seventy-five (75%) percent or more of holders in the principal amount. If an individual holder should transfer his interest in the debentures, the transferee would have no definite individual right to compel payment. It is also significant that the capital structure of the plaintiff corporation is arranged so that the requisite seventy-five (75%) percent of the holders includes a majority of the corporate stockholders. The entire transaction has been set up so that the corporate stockholders can effectively block an attempt by an individual holder to enforce payment.

Plaintiff also relies upon the fact that the doctors intended to make a loan at the time they purchased the debentures and upon the fact that the ratio of "debentures" to equity was 1.5 to 1. In the absence of the objective factors normally associated with a legitimate loan the Court believes that the subjective intent of the debenture holders and the absence of thin capitalization are entitled to little weight.

In the present case where the alleged creditors did not require the plaintiff to comply with the terms of the debenture instruments, where no interest was paid at all, where there was no meaningful right to enforce payment of interest or repayment of principal, where the instruments did not grant a single holder an individual right of enforcement, where the percentage of holders required to enforce the debenture instruments included a majority of the corporate stockholders so that enforcement was conditioned upon the consent of the stockholders of the alleged debtor, where the advances were unsecured and stood as security for the loans of other corporate creditors, where the alleged debentures were totally subordinated to the claims of all corporate creditors, where a sinking fund to provide funds for repayment and other normal creditor safeguards were absent, where principal and interest, as a practical matter, was payable out of corporate income, and where the funds advanced served the long-term capital needs of the corporation by providing funds essential to the acquisition of the medical building, the primary fixed corporate asset, the funds advanced are clearly contributions of risk capital and not legitimate loans. Accordingly, the Court concludes that the Commissioner correctly disallowed a deduction for accrued interest on plaintiff's corporation income tax returns for the years 1962, 1963 and 1964.

The above shall constitute the Court's Findings of Fact and Conclusions of Law as required by Rule 52(a), Federal Rules of Civil Procedure.

## JUDGMENT

It is ordered, adjudged and decreed that plaintiff take nothing in this action, that this action be dismissed on the merits and that the defendant United States of America, recover of plaintiff, The Champaign Realty Company, its costs of action.