**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2799

_____

In Re: ZOHAR III, CORP., ET AL.
Debtors

Patriarch Partners Management Group, LLC,
Appellant

_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. No. 1-20-cv-01419)
Hon. Maryellen Noreika

_____

Argued on May 26, 2022

Before: KRAUSE and PHIPPS, *Circuit Judges*, and STEARNS,* *District Judge*

G. David Dean
Norman L. Pernick
Patrick J. Reilley
Cole Schotz
500 Delaware Avenue
Suite 1410
Wilmington, DE 19801

Michael G. Farag
Gibson Dunn & Crutcher
333 South Grand Avenue

_____

* Honorable Richard G. Stearns, United States District Court for the District of Massachusetts, sitting by designation.

Los Angeles, CA 90071

Monica K. Loseman
Gibson Dunn & Crutcher
1801 California Street
Suite 4200
Denver, CO 80202

Michael L. Nadler
Akiva Shapiro          [ARGUED]
Randy M. Mastro
Gibson Dunn & Crutcher
200 Park Avenue
47th Floor
New York, NY 10166
*Counsel for Appellant*

Joseph M. Barry          [ARGUED]
Michael R. Nestor
Shane M. Reil
James L. Patton, Jr.
Young Conaway Stargatt & Taylor
1000 North King Street
Rodney Square
Wilmington, DE 19801

(Filed: July 29, 2022)

_____

**OPINION***

_____

KRAUSE, *Circuit Judge*.

Patriot Partners Management Group, LLC ("PPMG"), a consulting firm, claims

entitlement to a Transaction Fee under its Management Services Agreement ("MSA")

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

with LVD Acquisition, LLC a/k/a "Oasis," based on the sale of Oasis by Appellee Zohar III, Corp, et al. (the "Zohar Funds")[1] to the Culligan International Company ("Culligan"). Both the Bankruptcy Court and the District Court denied that claim, and we will affirm.

## I.    DISCUSSION[2]

Under the MSA, PPMG was entitled to a "Transaction Fee" upon the occurrence of a qualifying "Liquidity Event," defined in Section 3(c)(ii)(D) to include the sale of 50% of Oasis's equity, the sale of 80% of its assets, or the merger of Oasis with another entity, but with the proviso that "in each case, in order to constitute a qualifying Change of Control, the event must permit [Oasis] to pay all of its . . . outstanding debt."[3]  J.A.

---

[1] The Zohar Funds are comprised of Zohar III, Corp.; Zohar II 2005-1, Corp.; Zohar CDO 2003-1, Corp.; Zohar III, Limited; Zohar II 2005-1, Limited; and Zohar CDO 2003-1, Limited.

[2] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334.  The District Court had jurisdiction under 28 U.S.C. § 158(a)(1).  *See In re Owens Corning*, 419 F.3d 195, 203 (3d Cir. 2005) (applying a "broader concept of finality" in appeals in bankruptcy proceedings (quotations omitted)).  We have jurisdiction under 28 U.S.C. § 158(d)(1) by virtue of PPMG's timely notice of appeal.  Our review "duplicates that of the district court," such that we consider "the bankruptcy court decision unfettered by the district court's determination." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 736 (3d Cir. 2021) (quoting *In re Brown*, 951 F.2d 564, 567 (3d Cir. 1991)).  In general, we review the Bankruptcy Court's "legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof." *In re Cont'l Airlines*, 203 F.3d 203, 208 (3d Cir. 2000) (quoting *In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999)).

[3] In full, the MSA defines a Liquidity Event as follows:

> (x) a sale within any given 12 month period of 80% or more of [Oasis's] assets (without regard to liabilities) . . . , (y) the consummation of any transaction in which any person . . . becomes the beneficial owner of stock of [Oasis] constituting

3

849–50. The term "Change of Control" is nowhere defined and does not appear elsewhere in the MSA.

According to PPMG, the proviso did not disqualify it from receiving the fee either because (1) the proviso relates to a different part of the MSA and not to what qualifies as a Liquidity Event, or (2) if the proviso does relate to Liquidity Event, its condition was satisfied, *i.e.*, the total value paid for Oasis exceeded its outstanding debts. Neither argument carries the day.

## A. The Relevance of the Proviso

Both parties agree that the use of the term "Change of Control" (the "Open Term") was a scrivener's error. They disagree, however, as to what term was intended in its place. The Zohar Funds argue that the "only reasonable interpretation of the [] MSA is that the parties intended the term 'Change of Control' . . . to be 'Liquidity Event,'" Appellees' Br. 14, and because the Liquidity Event here, the equity sale of Oasis, was insufficient to cover its debts, the proviso precludes PPMG's receipt of the Transaction Fee. PPMG, on the other hand, contends that "Change of Control" should have read

more than 50% of the total fair market value or total voting power . . . , or (z) the consolidation of [Oasis] with, or merger of [Oasis] with or into any other entity pursuant to a transaction in which any person . . . becomes the beneficial owner of the stock of [Oasis] constituting more than 50% of the total fair market value or total voting power of [Oasis]; provided, however, that, in each case, in order to constitute a qualifying *Change of Control*, the event must permit [Oasis] to pay all of its . . . outstanding debt.

J.A. 849–50 (emphasis added).

4

"Change in Control"—a term defined in an addendum to the MSA that governs indemnification of employees for costs they might incur in litigation ("Annex A"). That reading would render the proviso irrelevant to the question of PPMG's entitlement to the Transaction Fee. Appellant's Br. 2.

Under New York law, which governs the MSA, "[a] written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties." *Scotto v. Georgoulis*, 932 N.Y.S.2d 120, 121 (N.Y. App. Div. 2011) (quotation omitted). Applying these principles, the Bankruptcy Court concluded that the Open Term was unambiguously read to mean "Liquidity Event" based on "the four corners of the MSA . . . because any other reading of the contract terms would be unreasonable."[4] J.A. 39.

We agree for three reasons. First, PPMG's construction contradicts the MSA's plain text. Section 3(c) makes explicit at the outset that the definitions that follow are only "[f]or purposes of this Section 3(c)," indicating that the proviso relates to the definition of Liquidity Event and not to a different portion of the agreement. J.A. 849. For its part, Annex A likewise states that its definition of "Change in Control" is "[f]or

---

[4] PPMG argues that the Bankruptcy and District Courts should have relied on the testimony of a signatory to the MSA that the term Liquidity Event was understood by the parties not to "depend[] on whether [Oasis's] sales price exceed[ed] Oasis's debt." Appellant's Br. 33 (quoting J.A. 329–30). But under New York law, "extrinsic evidence may be considered only if the agreement is ambiguous," which is "determined within the four corners of the document," and not where, as here, there is only one reasonable interpretation of the scrivener's error. *Scotto*, 932 N.Y.S.2d at 121; *see W.W.W. Assocs. v. Giancontieri,* 566 N.E.2d 639, 642 (N.Y. 1990); *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc'y*, 769 F.3d 807, 816 (2d Cir. 2014).

the purposes of this Annex A." J.A. 862. And while that definition does make use of the term "Liquidity Event" from Section 3(c)(ii)(D), it makes explicit its intent to incorporate a different part of the MSA by expressly referring to "clauses (y) [and] (z) of the definition of Liquidity Event" (relating to equity sales and mergers, respectively). *Id.* Had the parties intended the Open Term in Section 3(c)(ii)(D) to be "Change in Control" as defined in Annex A, we would expect no less explicit a cross-reference, but that textual clue is absent here. *See Quadrant Structured Prods. Co. v. Vertin*, 16 N.E.3d 1165, 1172 (N.Y. 2014) ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission.").

Second is the context and structure of Section 3(c)(ii)(D). Because this entire section of the MSA serves to define "Liquidity Event," it follows that the proviso in the last clause of the section qualifies the term being defined. In other words, the Open Term is most naturally read in context to mean the "Liquidity Event" itself, so as to impose a perfectly logical condition on a consultant's receipt of a transaction fee for work it performed in connection with a successful equity sale, asset sale, or merger of a portfolio company: that "in each case . . . to constitute a qualifying [Liquidity Event], the event must permit" Oasis to "pay all of its . . . outstanding debt." J.A. 850. Conversely, PPMG's reading—that the Open Term refers to the defined term "Change in Control" in Annex A—results in a condition that borders on the absurd: that the indemnification of certain employees' legal fees in litigating unsuccessful claims should somehow depend on whether Oasis's sale price exceeds its liabilities. *See McFarlane v. Altice USA, Inc.*,

6

524 F. Supp. 3d 264, 277 (S.D.N.Y. 2021) ("New York law . . . provides that a contract should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties." (quotations omitted)).

Finally, PPMG's construction would render superfluous other portions of the MSA. A "Change in Control" for purposes of indemnity under Annex A occurs in only two of the three circumstances outlined in the Liquidity Event definition, excluding the third, that is, the sale of 80% of Oasis's assets. J.A. 862. But the proviso applies "in each case" outlined in the Liquidity Event definition, including asset sales. J.A. 850. So, construing the Open Term to mean "Change in Control" would also render the phrase "in each case" either false or meaningless. *See Glob. Funding Grp., LLC v. 133 Cmty. Rd., Ltd.*, 251 F. Supp. 3d 527, 531 (E.D.N.Y. 2017) ("In interpreting a contract under New York law, . . . a Court must consider the entire contract to avoid adopting an interpretation that would result in an inconsistency between provisions or that would render a particular provision superfluous." (quotations omitted)).

In sum, we agree with the Bankruptcy and District Courts that the Open Term unambiguously means "Liquidity Event," and because the proviso applies to the Liquidity Event here, *i.e.*, the equity sale, PPMG is only entitled to a Transaction Fee if Oasis's sale price exceeded its outstanding debts.

## B. Whether the Proviso's Condition Was Satisfied

The Bankruptcy and District Courts concluded that the sale of Oasis to Culligan did not satisfy the proviso's condition. Central to that conclusion was the Bankruptcy Court's classification of three tranches of a term loan between the Zohar Funds and Oasis

7

(the "Amendment 8 Tranches") as debt, rather than equity. The Bankruptcy Court found that this classification was "not a close call, based on the unambiguous language" of Amendment 8 to the parties' Credit Agreement, which created these Tranches. J.A. 42. The District Court agreed that the classification was consistent with "a common sense evaluation of [the] facts and circumstances surrounding the transaction." J.A. 22.[5] For purposes of our review, because "the determinative inquiry in classifying [an investment] as debt or equity is the intent of the parties as it existed at the time of the transaction," the classification "is a question of fact that, 'once resolved by a [bankruptcy court], cannot be overturned unless clearly erroneous.'"[6] *In re SubMicron Sys. Corp.*, 432 F.3d 448, 457 (3d Cir. 2006) (quoting *A.R. Lantz Co. v. United States*, 424 F.2d 1330, 1334 (9th Cir. 1970)).

---

[5] PPMG argues that the Bankruptcy and District Courts "elevate[d] form over substance" by focusing on "[t]he terminology used in the Eighth Amendment," which allegedly "elide[d] the fundamental issue [of] 'whether the parties called an instrument one thing when in fact they intended it as something else.'" Appellant's Br. 36–37 (first quoting *Austin Vill., Inc. v. United States*, 432 F.2d 741, 746 (6th Cir. 1970), then quoting *In re SubMicron*, 432 F.3d 448, 456 (3d Cir. 2006)). But this argument misses the mark, as both the Bankruptcy Court and the District Court conducted a "common sense evaluation of the facts and circumstances" to conclude that the parties intended to create debt, not equity, in light of Amendment 8's terms and the surrounding context. J.A. 27.

[6] PPMG suggests that clear error review is inappropriate because the Bankruptcy Court purportedly made no factual findings based on witness testimony and did not conduct a formal recharacterization analysis in determining that the Amendment 8 Tranches were properly classified as debt. This argument is meritless because the Bankruptcy Court made the explicit factual finding that Amendment 8 created debt. S*ee* J.A. 41–43.

On this record, we cannot conclude that the Bankruptcy Court clearly erred in classifying the Amendment 8 Tranches as debt. As the Bankruptcy Court observed, "[s]ophisticated parties negotiated [Amendment 8] and used various terms therein" that make clear their intention to create debt. J.A. 42. Those terms include the description of Amendment 8 as an "amendment[] to the Credit Agreement" between Oasis and the Zohar Funds, J.A. 242; the reference to Oasis and the Zohar Funds as "Borrower" and "Lender," J.A. 242, 249; the description of the Amendment 8 Tranches as "[t]erm loan[s]," J.A. 249; the delineation of the "[t]ype of [l]oan[s]" and the "[a]pplicable [m]argin" used to calculate interest on each tranche under the credit agreement, J.A. 249; and the provision making the Tranches legal obligations of the Borrower, enforceable "subject to the satisfaction . . . of the conditions set forth" in the Credit Agreement, J.A. 242.

Although PPMG emphasizes the low rate at which interest accrued on these Tranches and that interest was allegedly never billed or paid, these factors are not "per se characteristics of equity," and neither that observation, nor any other evidence "outside the four corners" of Amendment 8, compels us to conclude that the Bankruptcy Court clearly erred. J.A. 43. As a result, Culligan's purchase of Oasis did not "permit [Oasis] to pay all of its . . . outstanding debt," J.A. 850, so PPMG was not entitled to a Transaction Fee.

II.     CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

9