**Paul W. BERTHOLD and Dorothy Berthold, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 18289.

United States Court of Appeals
Sixth Circuit.

Decided Nov. 26, 1968.

Paul A. Weick, Akron, Ohio, for petitioners.

Bennet N. Hollander, Dept. of Justice, Washington, D. C., for respondent; Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., on brief.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from a decision of the Tax Court adverse to the taxpayers. Petitioners are husband and wife who filed joint tax returns for the years 1957, 1958, and 1959 wherein this dispute arose. During all the applicable times Paul Berthold was owner and in sole control of two corporations—the Berthold Electric Company[1] and the Walberton Company.

The tax dispute pertains to the handling of $54,498.18 which was paid out of Berthold Electric Company funds for the construction of a building on land owned by Berthold. The building and land were transferred by him to the Walberton Company in 1960. Walberton then leased the building to Berthold Electric Company. No essential primary facts are in dispute, and most were stipulated—including those which follow:

"During the years 1956 through 1960, Berthold Electric Company maintained an account on its books entitled 'Building Accounts Receivable—Paul W. Berthold.' The books and records of the corporation show that on December 30, 1960, said account carried a debit balance of $54,498.18. On December 30, 1960, the books and records of the corporation show a credit to

[1]. Paul W. Berthold owns 140 of the 150 shares of stock of Berthold Electric Company, while his wife and children own the other 10.

'Building Accounts Receivable—Paul W. Berthold' in the amount of $54,-498.18, and a debit to the account entitled 'Notes Receivable' in the same amount. The books and records of the Walberton Company show the assumption of the liability in an account entitled 'Notes Payable.' "

Taxpayers treated the building funds as loans by the Berthold Electric Company to Paul Berthold. In this regard they relied primarily upon the facts set forth above, plus an entry in the minutes of a meeting of the Board of Directors of Berthold Electric, dated October 15, 1957, as follows:

"A meeting of Directors of the Berthold Electric Company was held with the following present:—

Paul W. Berthold,
President

Dorothy J. Berthold,
Vice President

Adeline Berthold,
Secretary-Treasurer.

"It was voted that any amount the Berthold Electric Company advances Paul W. Berthold on loans is to be repayable at 4% interest from date of loan.

5% on unpaid balance.

To be repayable five (5) years from January 1st, 1958."

Taxpayers also point to the fact that during most of the years about which testimony was taken, Berthold advanced substantial sums to the Berthold Electric Company.

The Commissioner redetermined the taxes of taxpayers for 1957, 1958 and 1959, treating the building fund items as dividends to Berthold or as capital gain.[2] The taxpayers did not (and do not) dispute the Commissioner's computations, but for the reasons stated above, do dispute the added income taxes as determined by the Commissioner and upheld by the Tax Court.

The Tax Court did not find any facts contrary to petitioners' contentions, but did infer from them and other undisputed facts a different conclusion—namely, that the $54,498.18 was dividend or capital gain income to taxpayers rather than a loan.

The Tax Court's opinion emphasized: 1) that the corporations involved were closely held and controlled; 2) that the dividends paid by Berthold Electric were nominal; 3) that there were no notes given and that there was no security in the form of a mortgage required by the alleged lender; 4) that there were no repayments or efforts to force repayments, and that there was no specific time for repayment, and 5) that no interest was paid or accrued on the books.

The Tax Court judge concluded:

"It seems incredible to us that a corporation lending construction funds for a building would do so not only without any evidence of indebtedness representing the loaned funds, but also without a lien on the building to secure repayment at least of the principal.

"For lack of sufficient evidence to overcome the presumption of the correctness of Respondent's determination and because all other issues raised by the pleadings have been settled by the parties by stipulation, we will enter our decision for Respondent under Rule 50."

■ The Tax Court's finding that the Berthold Electric Company advances were income and were not loans is an ultimate conclusion of fact by the court which evaluated the evidence, heard and judged the credibility of the witnesses. The Tax Court was entitled to draw reasonable inferences from the basic facts. We cannot reverse the Tax Court's ultimate finding unless we can fairly conclude that it is clearly erroneous. Commissioner of Internal Revenue v. Duber-

2. The Commisioner held that the sums paid to Berthold in 1958 exceeded Berthold Electric's earnings and profits, as well as taxpayer's basis for his stock, by the $11,641.89 which the Commissioner charged as capital gain.

stein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed. 2d 1218 (1960).

Petitioners rely for reversal largely upon three cases: Faitoute v. Commissioner, 38 B.T.A. 32 (1938); McReynolds v. Commissioner, 17 B.T.A. 331 (1929), and In re Ray v. United States, CCH STAND.FED.TAX REP. (68–1 U.S.Tax Cas.) ¶ 9152 (M.D.Tenn., Dec. 4, 1967). All of these cases involve corporate loans to major or sole stockholders without interest. In each the trial judge determined that the parties intended the funds to be advanced as loans and rejected contrary arguments of the government.

In each of these cases, however, the facts as we have reviewed them (including the fact that the loans were repaid!) were considerably more favorable to the taxpayer than those of the instant case. Moreover, in each of these cases the trial court decided as a matter of fact that the advances were loans. In our instant case the trial court held as a matter of fact that the advances were not loans and we are asked to reverse this holding as a matter of law.

■ Established authority holds that the intention of the parties is the controlling factor in determining whether or not advances should be termed loans. Chism's Estate v. Commissioner of Internal Revenue, 322 F.2d 956 (9th Cir. 1963); Clark v. Commissioner of Internal Revenue, 266 F.2d 698 (9th Cir. 1959).

■■ We note that Berthold testified directly on the critical issue of intent. He said that the $54,498.18 advanced was intended as a loan and was intended to be repaid. Such subjective testimony, however, can be technically true and still not controlling on the finder of the facts in this case. In this case "the parties" are really one and the same. Here, Walberton Company had a large loss carryover in the year 1960. We have no doubt that taxpayers did intend the advances to be a loan—at least for federal tax purposes. But such testimony (pertaining to transactions between a taxpayer and two of his alter egos) can appropriately be viewed with some diffidence unless supported by other facts which bring the transaction much closer to a normal arms-length loan. Nasser v. United States, 257 F.Supp. 443 (N.D.Cal.1966). The intention of the parties relates not so much to what the transaction is called, or even what form it takes, as it does to an actual intent that money advanced will be repaid. Commissioner of Internal Revenue v. Makransky, 321 F.2d 598 (3d Cir. 1963). Normal security, interest and repayment arrangements (or efforts to secure same) are important proofs of such intent. And here such proofs are notably lacking.

Much closer to the fact situation confronting us on this appeal are such cases as Atlanta Biltmore Hotel Corp. v. Commissioner of Internal Revenue, 349 F.2d 677 (5th Cir. 1965); Chism's Estate v. Commissioner of Internal Revenue, 322 F.2d 956 (9th Cir. 1963), and Gurtman v. United States, 237 F.Supp. 533 (D.N.J.), aff'd per curiam, 353 F.2d 212 (3d Cir. 1965).

■ Our review of this record does not convince us that the ultimate Tax Court finding of fact was clearly erroneous.

Affirmed.