**AUSTIN VILLAGE, INC., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 19538.**

United States Court of Appeals, Sixth Circuit.

Sept. 29, 1970.

Stanley R. Ruby, Department of Justice, Washington, D. C., Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Jonathan S. Cohen, Atty., Department of Justice, Washington, D. C., on the brief; Bernard J. Stuplinski, U. S. Atty., Cleveland, Ohio, of counsel, for appellant.

George I. Meisel, Cleveland, Ohio, Stephen J. Alfred, Squire, Sanders & Dempsey, Cleveland, Ohio, on the brief, for appellee.

Before EDWARDS, PECK, and Mc-CREE, Circuit Judges.

McCREE, Circuit Judge.

The sole issue we review in this appeal is whether certain advances to plaintiff-appellee corporation by its shareholders represented contributions to capital or were loans. If, as the District Judge held, the advances were loans, plaintiff is entitled to deduct accrued interest thereon pursuant to 26 U.S.C. § 163(a) [1] in computing its federal income tax liability.[2]

The District Judge's opinion, reported in 296 F.Supp. 382 (N.D.Ohio 1968), relates the background of this case in careful detail. The salient facts are these. Plaintiff corporation was organized in June, 1953 for the purpose of acquiring an option on a parcel of land. The five shareholders' intention at the time of the acquisition was to resell the land immediately, but when no buyer could be found, they decided instead to develop a shopping center and sought financing for the project. However, obtaining conventional financing proved to be difficult, and the shareholders were forced to advance funds to the corporation in order to sustain the project. The first advance consisted of $10,000 from each of four shareholders. In return, the corporation issued demand notes bearing 8% interest.

These first advances were followed by others, and, by the summer of 1955, the shareholders had invested $68,000 in the corporation. In June, 1955, the Board of Directors required each of the four shareholders to advance an additional $15,000 to the corporation. Moreover, the Board declared that the total investment of $128,000 would thereafter be carried on the corporation's books as paid-in surplus and that all evidence of indebtedness would be cancelled.

A little over a year later, in August, 1956, it was decided that the corporation would borrow an additional $25,000 from each of the four shareholders, and by February, 1957 the $228,000 investment had grown to $335,500. This latter figure was carried on the books as surplus, but was given the designation:

> Shareholders' cash and note receivable capital contributions, subordinated to creditors' accounts, not subject to with-

---

1. This section provides:

*General rule.*—There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

2. Although the present litigation covers only the year 1958 and involves $622.95, the parties have stipulated that the decision in this case will be applicable to the years subsequent to 1958.

drawal without Board of Directors' sanction.

In August, 1957, the shareholders decided to reorganize the corporation. They concluded that it was necessary to cancel all prior evidence of investment and to issue new stock and new notes in a ratio of one to three. Each share of common stock would have a stated value of $1,000, but would be obtainable only if accompanied by a loan of $3,000. Moreover, in return for the loan, the corporation would issue a cognovit note which would be subordinated to all outside creditors of the corporation and would not be payable "for the period of two years or after, unless it was the unanimous decision of the Board * * * [to] reduce the time limit of [the] notes." After the reorganization, the corporation's books showed 96 shares of common stock and notes totaling $288,-000.

Through the remainder of 1957 and into 1958, the shareholders continued to advance funds to the corporation. These advances were allocated to stock and loans in the agreed upon ratio of one to three, and by early 1958, the shareholders' total investment exceeded $608,000. Also, in 1958 the corporation succeeded in obtaining its first outside financing. Although the record is unclear regarding the amounts of such financing, the corporation apparently received $650,000 from the Union Savings and Trust Company of Warren, Ohio and approximately $32,-000 from the Second National Bank of Warren, Ohio. Both of these loans were secured and were repaid, with interest, according to established schedules.

The year 1958 also marked the entry of new shareholders. The original shareholders had exhausted their own resources and, accordingly, in August, 1958, they signed a contract with A. H. Ganger, M. E. Ganger, M. L. Ganger and Joseph Krizman. The contract provided that all outstanding notes would be recalled and that new notes would be issued both to the original shareholders and to the new shareholders. These new notes would be subordinated to those of outside creditors of the corporation, would bear interest at 6% per annum, and would be due September 1, 1963. However, it was also provided that:

> Said principal and interest shall be payable before or after the aforesaid due date upon a date to be determined by unanimous approval of all parties to the contract. * * *

Pursuant to the contract, a stock certificate for 10 shares and a note evidencing indebtedness of $30,000 were issued to Krizman. Also, a stock certificate for 15 shares was issued to M. L. Ganger and a note for the sum of $45,000 was issued to A. H. Ganger.[3] Thus, the one to three ratio was maintained.

The next significant transaction occurred in September, 1958 when A. H. Ganger loaned the corporation an additional $100,000. This loan was not accompanied by any stock transaction. Moreover, as contrasted with the other shareholder loans, it was secured by a real estate mortgage and was not subordinated to loans by outside creditors. Furthermore, annual interest payments were made on this loan during the years 1958 to 1962 and the loan was repaid by October, 1964.

By way of comparison, A. H. Ganger's original loan of $45,000, was still carried on the corporation's books in December, 1964, at which time it was transferred to the accounts of two of the original shareholders. Prior to this time, the 15 shares issued to M. L. Ganger had been transferred to the accounts of the same two shareholders.

Relying primarily on this court's decision in Byerlite Corp. v. Williams, 286 F.2d 285 (6th Cir. 1960), the District Judge concluded that the decisive factor in determining whether a portion of the aforementioned advances were loans was

---

3. The fact that the stock certificate was issued to M. L. Ganger and the note was issued to A. H. Ganger is unimportant since "as to their investment in [the corporation], A. H. Ganger and M. L. Ganger were acting cooperatively".

the "intention of the parties". He stated that "if the real intent is to make an actual loan that intent must be honored." Austin Village, Inc. v. United States, 296 F.Supp. 382, 394 (N.D.Ohio 1968). Furthermore, he considered the critical factor in assessing the genuineness of the parties' intent to be the presence or absence of a legitimate business purpose for treating the advances in the manner adopted in the present case. See Biritz Constr. Co. v. Commissioner of Internal Revenue, 387 F.2d 451, 458–459 (8th Cir. 1967). Applying these criteria, the District Judge concluded that "the advances made to the plaintiff corporation by its shareholders were intended to be loans necessitated by the needs of the business, and that such intent must prevail." 296 F.Supp. at 398.

On appeal, the Government contends that the issue whether the advances to the corporation constituted debt or equity is a question of law which can be reviewed *de novo* by this court. Furthermore, the Government contends that this question of law is to be determined by analyzing the extent to which the objective criteria normally associated with legitimate debts—*i. e.*, an unconditional promise to repay, a fixed maturity date, a fixed interest rate, a fixed schedule for payment of principal and interest, some form of security, and a sinking fund to provide funds for repayment—were present in the instant case.

Taxpayer, on the other hand, contends that the District Judge properly treated the issue whether the advances were debt or equity as a question of fact, and that we are limited on review to a determination whether his conclusion that a portion of the advances were genuine loans was clearly erroneous. Rule 52(a), Fed.R. Civ.P. Taxpayer also contends that in this case the absence of the objective criteria normally associated with debt is attributable to legitimate business reasons and that the presence of legitimate business reasons is the crucial factor in determining whether the District Judge's finding of fact was clearly erroneous.

Although this court has consistently treated the issue of whether advances to a corporation constitute debt or equity as a question of fact, *see, e. g.*, Donisi v. Commissioner of Internal Revenue, 405 F.2d 481 (6th Cir. 1968); Berthold v. Commissioner of Internal Revenue, 404 F.2d 119 (6th Cir. 1968); Smith v. Commissioner of Internal Revenue, 370 F.2d 178 (6th Cir. 1966); Foresun, Inc. v. Commissioner of Internal Revenue, 348 F.2d 1006 (6th Cir. 1965); Moughon v. Commissioner of Internal Revenue, 329 F.2d 399 (6th Cir. 1964), on conceptual analysis the better view may be that this issue is a question of law. Berkowitz v. United States, 411 F.2d 818, 821 (5th Cir. 1969); Tyler v. Tomlinson, 414 F.2d 844, 850 (5th Cir. 1969). Traditionally, the fact-finding process consists of resolving conflicts in the evidence concerning the existence *vel non* of an historical event. Thus, the determination whether the shareholders made advances to the corporation, the amounts and dates of such advances and what the shareholders received in return for the advances properly falls under the rubric of findings of fact. However, the process of ascertaining facts should not be confused with the process of attaching a legal characterization and consequences to historical events found to have occurred. The determination whether the advances by the shareholders represent debt or equity involves the latter process, and, as such, the determination produces a conclusion of law. It requires the application of certain established criteria to a set of facts in order to attach a legal characterization and consequences to those facts. *Cf.* Union Planters National Bank v. United States, 426 F.2d 115, 117 (6th Cir. 1970).

We find it unnecessary, however, in this case to decide whether to overrule our prior precedents. We conclude that even if the debt-equity issue is considered a question of fact, the District Judge erred as a matter of law by failing to apply the proper criteria in determining that the shareholders' advances were genuine loans.

The District Judge concluded that the decisive factor was the real intention of the parties and that intent "must be tested in light of objective factors." 296 F.Supp. at 393. However, in analyzing and weighing the various objective criteria relevant to a determination of the debt-equity issue, he stated that *"business purpose* * * * [was] the factor which the Court considers *critical* in this case". (Emphasis added.) He minimized the importance of the objective factors relied on by the Government, since their absence was attributable to what he considered legitimate business reasons.

■ Although in Byerlite Corp. v. Williams, *supra*, this court emphasized the importance of a legitimate business purpose, as contrasted with a tax avoidance purpose, in a determination of the intention of the parties, we have recently made it clear that the objective factors propounded by the Government are decisive in cases of this type. Thus, in Donisi v. Commissioner of Internal Revenue, 405 F.2d 481, 483 (6th Cir. 1968), we stated:

> Although the intention of the [parties] is weighed heavily in determining whether the advances are loans, * * * the intention of the [parties] "can appropriately be viewed with some diffidence unless supported by other facts which bring the transaction much closer to a normal arms-length loan." Berthold v. Commissioner [of Internal Revenue], [404 F.2d 119, 122 (6th Cir. 1968)]. * * * This court has recently stated that important proofs of such intent are the arrangements concerning the normal security, interest and repayment or efforts to secure the same.

We have also relied on the presence of objective criteria normally associated with debt in the following cases: Smith v. Commissioner of Internal Revenue, *supra*; Foresun, Inc. v. Commissioner of Internal Revenue, *supra*; Moughon v. Commissioner of Internal Revenue, *supra*. *See also* Ambassador Apartments,

Inc. v. Commissioner of Internal Revenue, 406 F.2d 288 (2d Cir. 1969); Fin Hay Realty Co. v. United States, 398 F. 2d 694 (3rd Cir. 1968). Accordingly, the District Judge's failure to adequately weigh the objective indicia outlined in these cases constituted reversible error.

■ Furthermore, we have analyzed the factors relevant to a determination whether the advances here constituted genuine loans, and have concluded that any finding other than that the advances represented capital investments would be clearly erroneous. The maturity dates and interest rates assigned to the alleged loans were, at best, illusory, and in fact no interest payments or payments of principal had been made at the time this litigation commenced. Moreover, there was no *unconditional* promise to repay the loans, no fixed schedule of payments, no security and no sinking fund to provide funds for repayment. Also, it is significant that the putative loans were subordinated to the claims of all other creditors and were the result of the shareholders' inability to obtain sufficient conventional financing for the project.

By way of contrast, the bank loans that eventually were obtained had the conventional indicia of debt and were repaid in due course. Even more revealing is the contrast between the Gangers' initial investment under the established one to three ratio and A. H. Ganger's subsequent loan of $100,000, which was evidenced by the usual characteristics of debt and was discharged, with interest, in 1964.

Under these facts, we conclude that regardless of whether we view the debt-equity issue as a question of law or a question of fact, the advances constituted contributions to capital. The shareholders were unable to obtain outside financing for development of the land and decided therefore to invest their own funds according to a plan which made repayment contingent upon the success of the venture. This is a classic example of an

investment of risk capital. As the Fifth Circuit recently stated in a similar case:

> To hold otherwise would be to ignore the plain facts and to elevate form over substance. Tax law requires that creditorship have genuine existentiality. * * * This requires more than a declaration of intention to create indebtedness and more than the existence of corporate paper encrusted with the appropriate nomenclatural captions.

Tyler v. Tomlinson, 414 F.2d 844, 850 (5th Cir. 1969).

Accordingly, the judgment of the District Court is reversed and the cause is remanded with instructions to enter judgment in favor of the Government.

EDWARDS, Circuit Judge (concurring).

I concur in Judge McCree's result and (with one exception) with his opinion also.

As the author of this Court's opinion in Berthold v. Commissioner of Internal Revenue, 404 F.2d 119 (6th Cir. 1968), however, I think it appropriate to add a few words on the standard of review issue which is common to both cases. In Berthold, the Commissioner argued that the standard of review was the "clearly erroneous" standard which in that case favored the government's collection of the tax. Here the decision below is adverse to the government and we are invited to hold that we review the fact finder's conclusion (that the transactions were "loans") as erroneous as a matter of law.

Whatever might be our thoughts if we wrote on a fresh slate, I felt in Berthold and continue to feel here that Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L. Ed.2d 1218 (1960), settles this issue for us in favor of the "clearly erroneous" standard of review. While I recognize that Duberstein dealt with tax concepts of "gift" versus "compensation" and that in Berthold and this case we deal with tax concepts of "loans" versus "dividends" or "equity," it seems to me that the reasoning of the majority of the Court in Duberstein affords us no meaningful distinction on factual grounds as far as standard of review is concerned.

Of course, we cannot (and the government should not) blow hot or cold, depending on which standard would require payment of the tax. It seems to me that the only logical step for the Commissioner (if he is now convinced that a fact finder's conclusion that a transaction is a "loan" should be reviewed as a matter of law) is to seek reversal of Duberstein. Obviously, this is not within this Court's power.