LEONARD C. JAQUES AND SYBIL J. JAQUES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jaques v. Commissioner
Docket No. 22869-88
United States Tax Court
T.C. Memo 1989-673; 1989 Tax Ct. Memo LEXIS 673; 58 T.C.M. (CCH) 1026; T.C.M. (RIA) 89673; December 26, 1989
Edward J. Fletcher and Stephen A. FitzPatrick, for the petitioners. Jacqueline M. Hotz, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in and additions to petitioners' Federal *674 income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1983
$  24,255
$  1,212.75
*
$  6,063.75
1984
120,377
6,018.85
*
30,094.25
1985
301,970
15,098.50
*
75,492.50
Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues remaining for decision are (1) whether amounts withdrawn by petitioner from his wholly owned corporation are loans or taxable income, and (2) whether petitioners are liable for the additions to tax set forth above. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Leonard C. Jaques and Sybil J. Jaques (petitioners) resided in Grosse Pointe Shores, Michigan, when they filed the petition in this case. Leonard C. Jaques, P.C. (the corporation) was incorporated in Michigan on *675 November 11, 1971, as a professional corporation engaged in the practice of plaintiffs' class action law. During the years in issue, Leonard C. Jaques (petitioner) owned all of the outstanding stock of the corporation. Petitioner's basis in the stock of the corporation was $ 20,000. The corporation used the cash method of accounting and filed its corporate tax returns on a fiscal year basis ending October 31. Prior to the years in issue, the corporation established a defined benefit pension plan. Beginning in 1982 and continuing throughout the years in issue, the corporation withdrew the following amounts from the pension plan: Year Ended
October 31
Amount
1983
$  14,750.00
1984
56,818.77
1985
165,502.05
The withdrawals from the pension plan by the corporation were reflected in executed promissory notes carrying interest at the rate of 15 percent per annum. During the years in issue, the corporation made monthly interest payments to the pension plan. In 1977, petitioner began making withdrawals from the corporation. Petitioner used the amounts withdrawn from the corporation during 1983, 1984, and 1985 to pay day-to-day personal living expenses. *676 Petitioner withdrew the following amounts from the corporation: Year Ended
December 31
Amount
1983
$ 140,687.00
1984
275,682.00
1985
803,398.00
These withdrawals were reflected as "Loans to Stockholders" by bookkeeping entries made on the books and records of the corporation. On its income tax returns, the corporation reflected the loans to stockholders as assets as follows: Year Ended
October 31
Amount
1983
$   764,166.72
1984
1,007,119.02
1985
1,820,837.25
Petitioner did not execute notes for these withdrawals, and there was no maturity date set for repayment. Petitioner did not pledge any collateral as security for the repayment of the amounts withdrawn. The corporation did not take any action to enforce the repayment of the amounts withdrawn by petitioner. During the years in issue, however, petitioner repaid amounts previously withdrawn as follows: Year Ended
December 31
Amount
1983
$ 10,000.00
1984
14,000.00
1985
23,516.85
Petitioner also repaid $ 187,000 of amounts previously withdrawn by way of a deduction from his bonus compensation paid by the corporation on October 31, 1986. *677 Petitioner's personal financial statement prepared as of December 17, 1987, noted that "Leonard C. Jaques owes his law firm $ 2,645,000.00, but since the professional corporation stock is wholly owned by Leonard C. Jaques, the 'loan' is a wash." Petitioner's personal financial statement prepared as of November 30, 1988, reflected loans payable to the corporation in the amount of $ 3,042,000. In a note to the financial statement, petitioner disclosed that "The $ 3,042,000.00 represents monies I have borrowed over the years from the P.C. to be repaid whenever convenience may focus." During the years in issue, the corporation had taxable income or loss and retained earnings or deficits as follows: Year Ended
Taxable
Retained Earnings
October 31
Income * (Loss)
(Deficit)
1983
$ (976,264.19)
$ (925,875.47)
1984
301,419.16 (631,538.26)
1985
659,858.47 14,721.17 During each of the years in issue, the corporation paid petitioner a salary of $ 150,000.24. During 1984 and 1985, the corporation also reported on Forms W-2 $ 37,093 and $ 131,416, respectively, *678 as other compensation paid to petitioner for imputed interest on the withdrawals. The corporation did not, however, pay any dividends during this period. Petitioner believed that, under Michigan law, the corporation could not pay a dividend when it had a deficit balance in retained earnings. Petitioner believed that he had sufficient assets and future earnings that would enable him to repay the withdrawals. Petitioner, however, made no attempt to liquidate his assets to repay the withdrawals. Vincent E. Scapini (Scapini), an accountant and "enrolled agent," prepared petitioners' income tax returns from 1969. Either Scapini or someone associated with his firm prepared the corporation's tax returns from the time it was formed. On his Federal income tax returns for 1983, 1984, and 1985, petitioner reported salary income of $ 150,000.24, $ 187,093.24, and $ 281,416.24, respectively. On Forms W-2 attached to his tax return for 1984, petitioner disclosed wages of $ 150,000.24 and other compensation of $ 37,093.00 attributed to an interest-free loan. On Schedule A of his 1983 income tax return, petitioner deducted interest of $ 39,750.00 as paid to the "LCJ Pension Trust." On Forms *679 W-2 attached to his tax return for 1985, petitioner disclosed wages of $ 150,000.24 and other compensation of $ 131,416.00 attributed to an interest-free loan. On Schedule A of his 1984 income tax return, petitioner deducted other interest of $ 36,437.50 as paid to the "LCJ Pension Trust" and $ 37,093.00 attributed to an interest-free loan from the "L.C.J. P.C." On Form 6251, Alternative Minimum Tax Computation, attached to his 1984 income tax return, petitioner reported $ 14,346.04 as "Qualified interest on property used as a residence." Subsequently, on Form 1040X, Amended U.S. Individual Income Tax Return, petitioner explained that the qualified interest reported on his 1984 income tax return "should have been increased by $ 36,437.50 which was the second mortgage interest on residence, borrowed from Leonard C. Jaques P.C. Pension Plan." On Schedule A of his 1985 income tax return, petitioner deducted interest of $ 36,437.50 paid to the "LCJ Pension Trust" on line 11.a. as home mortgage interest paid to a financial institution. On Schedule A of his 1985 income tax return, petitioner also deducted other interest of $ 131,416.00 attributed to an interest-free loan from the "LCJ *680 P.C." Respondent determined that the withdrawals from the corporation were taxable distributions under section 301 includable in petitioner's taxable income. Of the $ 140,687 withdrawn in 1983, respondent determined that $ 20,000 should be applied against petitioner's basis in the corporation, and the remaining $ 120,687 should be taxed as a gain from the sale or exchange of property pursuant to sections 301 and 1001. Respondent also determined that the entire $ 275,682 withdrawn during 1984 was a taxable dividend pursuant to section 316. Finally, of the $ 803,398 withdrawn in 1985, respondent determined that $ 647,384, the amount of the corporation's earnings and profits, was a taxable dividend pursuant to section 316. Respondent determined that the remaining $ 156,014 withdrawn in 1985 should be taxed as a gain from the sale or exchange of property pursuant to sections 301 and 1001. OPINION Respondent contends that the withdrawals from the corporation were taxable distributions that are includable in petitioner's taxable income. Petitioner asserts that the withdrawals were nontaxable loans that he intended to repay with future earnings. *681 Petitioners bear the burden of proving that respondent's determinations are erroneous. Rule 142(a). Whether advances from a corporation to its shareholder constitute bona fide loans is a factual question and depends upon the existence of an intent, at the time the advances occurred, on the shareholder's part to repay the advances and an intent on the corporation's part to enforce the obligations. Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. a Memorandum Opinion of this Court. The issue thus turns upon all of the circumstances surrounding the transactions. Wiese v. Commissioner, 93 F.2d 921 (8th Cir. 1938), affg. 35 B.T.A. 701 (1937). Where the shareholder receiving the advances controls the corporation, however, we must carefully scrutinize the transactions. Haber v. Commissioner, 52 T.C. 255, 266 (1969), affd. per curiam 422 F.2d 198 (5th Cir. 1970). In determining whether the shareholder and the corporation possessed the requisite intents at the time of the advances, the courts have examined a number of factors, including the following: whether the asserted obligations were *682 secured by collateral; whether there existed a fixed schedule for repayment; whether interest was paid or accrued; whether the shareholder repaid any part of the advances; whether the shareholder had the ability to repay the advances; how the parties treated the advances on their books and records; whether there existed a specific business purpose for the advances; whether the corporation had a history of paying dividends; whether the corporation had earnings and profits available to pay dividends; and whether advances to shareholders were made in proportion to their shareholdings. See, e.g., Dolese v. United States, 605 F.2d 1146, 1153 (10th Cir. 1979); Alterman Foods, Inc. v. United States, 505 F.2d 873, 876 n.6 (5th Cir. 1974); Livernois Trust v. Commissioner, 433 F.2d 879, 882 (6th Cir. 1970), affg. a Memorandum Opinion of this Court; Berthold v. Commissioner, 404 F.2d at 121. Because of the nature of this issue, the above factors are not exclusive, and no one is determinative. The factors merely represent objective evidence helpful to the courts in analyzing all of the relevant facts and circumstances. Based *683 on our consideration of the entire record, we conclude that petitioner has not proven that he possessed an intent to repay the 1983, 1984, and 1985 withdrawals at the time they occurred. Petitioner relies most heavily upon his own unsupported testimony that he intended to repay every withdrawal from the corporation and the recording of the withdrawals as accounts receivable by the corporation. We believe that the analysis of the Court of Appeals for the Sixth Circuit in Berthold v. Commissioner, supra, provides an appropriate response to petitioner's arguments: We note that Berthold testified directly on the critical issue of intent. He said that the $ 54,498.18 advanced was intended as a loan and was intended to be repaid. Such subjective testimony, however, can be technically true and still not controlling on the finder of the facts in this case. In this case "the parties" are really one and the same. * * * We have no doubt that taxpayers did intend the advances to be a loan -- at least for federal tax purposes. But such testimony (pertaining to transactions between a taxpayer and two of his alter egos) can appropriately be viewed with some diffidence unless *684 supported by other facts which bring the transaction much closer to a normal arm's-length loan. Nasser v. United States, 257 F. Supp. 443 (N. D. Cal. 1966). The intention of the parties relates not so much to what the transaction is called, or even what form it takes, as it does to an actual intent that money advanced will be repaid. Commissioner of Internal Revenue v. Makransky, 321 F.2d 598 (3d Cir. 1963). Normal security, interest and repayment arrangements (or efforts to secure same) are important proofs of such intent. And here such proofs are notably lacking. [404 F.2d at 122.] In Livernois Trust v. Commissioner, supra, the Court of Appeals, following its decision in Berthold v. Commissioner, supra, reached a similar conclusion: Essentially the problem here is one of self-dealing between the Trustees of a Trust and five corporations which those same Trustees controlled. In order to liquidate tax liabilities of the deceased Theodore B. Livernois, Sr., who is settlor of the Trust, the Trustees occasioned the five corporations to make payments of approximately $ 294,000. * * * No schedule *685 of repayments was ever tendered or demanded. No interest was ever paid and the one repayment of $ 4,000 was offset by payments to the Trust of $ 95,000 in the same year. * * * [433 F.2d at 882.] In support of his argument that the withdrawals were bona fide loans, petitioner cites Wiese v. Commissioner, 93 F.2d at 923, where the court stated: The significant fact in the present case was the intent of the petitioner when he took the money, whether he took it for permanent use in lieu of dividends or whether he was then only borrowing. The intent must be inferred from the conduct of the petitioner, since there is no other evidence of it. * * * Petitioner argues that there are no facts in the instant case from which we can infer that he intended the withdrawals to be permanent. Petitioner, however, bears the burden of proving that he intended the withdrawals to be loans. As the Court of Appeals for the Eighth Circuit concluded in Wiese v. Commissioner, supra:
It is important that courts do not go too far in relieving the taxpayer of his burden of proof in cases such as this, where both the facts and the evidence are peculiarly *686 subject to the control and knowledge of the taxpayer. If individuals should be allowed to take advantage of the government's inability to recognize their unexpressed intentions the way would be open for one to say in retrospect when his income accrued, according to his own advantage. [93 F.2d at 923.] The record herein contains very little documentary evidence in support of petitioner's testimony. The corporation did classify the withdrawals as loans to stockholders on its books and records, and petitioner did make some small, sporadic repayments during the years in issue. The repayments of approximately $ 48,000 were offset by withdrawals of approximately $ 1,220,000 during the same period. No other objective manifestations of contemporaneous intent to repay have been established. Petitioner has not demonstrated that the withdrawals were represented by interest-bearing notes or that he periodically repaid principal and interest. The withdrawals were unsecured and were not subject to a fixed repayment schedule. Because petitioner was the sole shareholder of the corporation, the withdrawals were in proportion to his holdings. The corporation had substantial *687 current earnings, yet paid no dividends. See Roschuni v. Commissioner, 29 T.C. 1193, 1202 (1958), affd. per curiam 271 F.2d 267 (5th Cir. 1959). The pattern continued over several years. Based upon all of the evidence before us, we conclude that petitioners have not satisfied their burden of proof on this issue. Additions to Tax
Section 6653(a)
Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the underpayment attributable to negligence. For the purposes of section 6653(a), negligence is the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Generally, the addition to tax for negligence is not imposed where a taxpayer's deductions are taken in good faith and based on advice of a competent tax expert. *688 Otis v. Commissioner, 73 T.C. 671, 675 (1980), affd. without published opinion 665 F.2d 1053 (9th Cir. 1981). To successfully insulate themselves from this addition to tax, however, taxpayers must provide their agents with all relevant information necessary to prepare the return. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). Petitioners relied on an experienced accountant to prepare their tax returns for the years in issue. Petitioner was not a tax attorney. Petitioners kept records of the funds withdrawn from the corporation and provided this information to their accountant. Under these circumstances, petitioners are not liable for the additions to tax under section 6653(a). Section 6661
Section 6661 provides for an addition to tax equal to 25 percent of the underpayment of tax attributable to a substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The section 6661 addition to tax is inapplicable, however, *689 if there was substantial authority for the taxpayer's treatment of the items in issue, or if the relevant facts relating to the tax treatment were adequately disclosed on the return. Sec. 6661(b)(2)(B)(i) and (ii). Petitioners substantially underreported taxable income on their tax returns for all the years in issue. Petitioners argue that there was substantial authority for their position regarding the taxability of the corporate withdrawals. Petitioners also contend that they adequately disclosed the relevant facts affecting the tax treatment of the withdrawals on their individual income tax returns and on the corporation's income tax returns. Because we conclude that petitioners did adequately disclose the relevant facts concerning their claimed loans from the corporation, we need not decide whether there was substantial authority for their position that the withdrawals were nontaxable loans. The requirement of adequate disclosure can be satisfied by providing on the return sufficient information to enable respondent to identify the potential controversy involved. *690 Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). Petitioners cite no authority to support the proposition that the requirement of adequate disclosure of the tax treatment of items on their individual return can be satisfied by information provided on a corporate tax return. Petitioners did, however, attach Forms W-2 to their tax returns disclosing the imputed interest income on their claimed interest-free loans from the corporation. In addition, petitioners disclosed the interest expense associated with the claimed loans on various schedules attached to their returns. Based on our examination of the schedules and forms attached to petitioners' tax returns, we conclude that they did adequately disclose therein the specific facts affecting the tax treatment of their claimed loans, i.e., the existence of the interest-free loans from the corporation to its shareholder, and petitioners' position that only the imputed interest was taxable. Although we have determined that the withdrawals were not loans for tax purposes, respondent was advised of the potential controversy. Petitioners are therefore not liable for the additions to tax under section 6661(a). To *691 reflect concessions and the foregoing, Decision will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the entire deficiency.↩
*. Taxable income before net operating loss deduction.↩