T.C. Summary Opinion 2008-32

UNITED STATES TAX COURT

DAVID K. CARLSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9071-05S.                    Filed March 31, 2008.

David K. Carlson, pro se.

<u>Catherine L. Campbell</u>, for respondent.


WHERRY, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

this opinion shall not be treated as precedent for any other case.

This case is before the Court on a petition for redetermination of a deficiency for the taxable year 2001. The issue for decision is whether petitioner is liable for a deficiency attributable to the 10-percent additional tax under section 72(t) for an early distribution from an employee stock ownership plan.

## Background

Some of the facts have been stipulated by the parties. The stipulations, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed petitioner resided in Spokane, Washington.

Petitioner was born in 1947. Petitioner has been an employee of Kaiser Aluminum & Chemical Corp., a.k.a. Kaiser Aluminum--Trentwood (Kaiser), since at least 1985. In 1985 and 1986, Kaiser and the United Steelworkers of America (USWA) came to a labor agreement in which the USWA agreed that union members would give up wages and benefits, which included vacation, medical, dental, and vision, in exchange for Kaiser Cumulative (1985 Series A) Preferred Stock. On March 11, 1986, Kaiser issued a notice entitled "PREFERENCE STOCKS ISSUED, CONTRIBUTED TO EMPLOYEE STOCK PLANS", which stated in pertinent part:

Kaiser Aluminum & Chemical Corporation today announced that, in accordance with previous commitments, it has issued 820,425 shares of its Cumulative (1985 Series A) Preference Stock and contributed it to the Kaiser Aluminum USWA (United Steelworkers of America) Employee Stock Ownership Plan. The plan was established last year as part of the labor agreement negotiated with the USWA.

This issue is not convertible to common stock and therefore does not dilute the value of common shares. Also, this issue of preferred stock cannot vote in the current consent solicitation, and, while held in the plan, will not receive cash dividends until 1990 at the earliest.[2]

The Kaiser Aluminum USWA Employee Stock Ownership Plan Summary provides the following description of the plan:

THE PLAN AT A GLANCE

Briefly, here are the main features of the Plan:

All active hourly employees (and those eligible for recall or entitled to return to work) who were covered by the Master Labor Agreement on March 31, 1985, except those at the Bay Minette and Halethorpe plants, automatically participate in the Plan.

Shares of Company Preference Stock (the "Stock") were allocated to your account in exchange for sacrifices you made in pay and other fringe benefits during the period April 1, 1985 through April 3, 1988. No further contributions will be made.

---

[2]A document entitled "KAISER ALUMINUM – UWSA EMPLOYEE STOCK OWNERSHIP PLAN" states in pertinent part: "After an employee is in possession of his shares he receives a cumulative annual dividend of $5 per share payable evenly over the year – on March 1, June 1, September 1, and December 1." According to petitioner's testimony, no dividends or interest were paid on the stock allocated to his account.

You receive the shares in your account if you retire, leave the Company, die, or are laid off or ill longer than six months.

You may be able to redeem the Stock in cash from the Company at $50 per share through a separate Redemption Trust, subject to sufficient funding.

You are not taxed when these contributions are made to your account, and you may be eligible for special tax treatment when you receive a payout from the Plan.

*    *    *    *    *

**FEDERAL INCOME TAX INFORMATION**

*    *    *    *    *

**The value of your Stock (either pro rata redemption, 100% stock distribution or distribution in connection with a special election) is fully taxable in the year the distribution is received unless you elect that the distribution be directly rolled over to any IRA, the Savings Plan or another qualified plan or you accomplish a rollover within 60 days after you receive a distribution.**

*    *    *    *    *

**OTHER FACTS ABOUT THE PLAN**

*    *    *    *    *

**Type of Plan, Plan Number**

The Plan has been designed to qualify as a stock bonus plan.  The Plan number is 055.

In 2001 petitioner withdrew $8,268 from his account with the Kaiser Aluminum United Steelworkers of America Employee Stock Ownership Plan (Kaiser USWA ESOP).  He reported the withdrawal as pension income on line 16b of his joint Form 1040, U.S.

Individual Income Tax Return, for that year.  Petitioner had not attained the age of 59-1/2 in 2001.  Petitioner did not roll over his distribution into an individual retirement account, savings plan, or other qualified plan.

Respondent mailed to petitioner and his wife, Laree M. Carlson, a notice of deficiency on March 23, 2005, in which respondent determined a deficiency of $826.80.  The deficiency arose from the imposition of the 10-percent additional tax under section 72(t).  Petitioner filed a timely petition with this Court, which stated in pertinent part:

> THE MONEY I RECEIVED FROM MY EMPLOYER (KAISER - TRENTWOOD) WAS FOR CONCESSIONS WE TOOK OF 4.50 PER HOUR.  THIS WAS PUT INTO PREFERRED A STOCK AND WE RECEIVED NO DIVIDENDS OR INTEREST FROM THIS.  THIS IS NOTED ON THE CHECK STUB AS ORDINARY INCOME AND WAS PAID AS E-STOCK.

On December 2, 2005, Appeals Officer Beth Heritage (Ms. Heritage) mailed to petitioner a letter in response to the one petitioner had mailed to the Internal Revenue Service (IRS) on November 3, 2004.  Ms. Heritage's letter stated in pertinent part:

> In the course of my research I spoke to David Foster from USWA (in general terms - your name was not mentioned during our conversation), and he confirmed that the union never intended for the stock to [be] part of a retirement plan.
>
> Unfortunately, I must look at how Kaiser accounted for the stock payout, not the union's intent in negotiating the plan.  Kaiser structured the stock

payout as an Employee Stock Ownership Plan, or ESOP. ESOPs are defined in Internal Revenue Code § 401 as a 'Qualified Plan.' Because Qualified Plans receive special tax treatment, distributions from them are also subject to special rules.[3]

\*     \*     \*     \*     \*

While I understand that you were under the impression that this payment was essentially for 'back pay,' I cannot ignore the fact that the stock was held in a Qualified Plan and thus the payment you received is classified as an early distribution.

## Discussion

### I. Contentions of the Parties

Petitioner contends that respondent should treat similarly situated taxpayers the same. Petitioner claims that the Federal income tax returns of other Kaiser USWA ESOP participants were audited for their 2001 taxable years regarding withdrawals from the Kaiser USWA ESOP, and that at least one of the audited participants was found by the IRS to be not liable for the section 72(t) additional tax. Petitioner presented at trial a copy of a check and pay stub, dated March 1, 2001, for one of his

---

[3]The special rules include an exception to normal income realization rules which permitted the USWA members to delay recognition of income as the result of Kaiser Cumulative (1985 Series A) Preferred Stock allocations to their accounts until the stock was distributed to them. Even upon distribution, if the stock was rolled over into a qualified plan, income recognition might be further delayed. This avoided the possible need for USWA members to pay tax before they could sell the stock or receive the cash needed to pay the tax.

fellow Kaiser USWA ESOP participants that treated the ESOP withdrawal as ordinary income.[4]

Petitioner also presented a letter from the same participant to the IRS regarding the audit of his 2001 Federal income tax return. The letter states: "You say I didn't pay a penalty for cashing out a retirement program before I was 59 1/2 years of age. The problem is that this fund I was paid from was for back wages that I gave up between 1985-1988." The letter goes on to make many of the same arguments raised by petitioner. Petitioner also presented a closing notice from the IRS for that same Kaiser USWA ESOP participant that stated: "we were able to clear up the differences between your records and your payers' records. If you sent us a payment based on our proposed changes, we will refund it to you * * * If you have already received a notice of deficiency, you may disregard it."

In regard to petitioner's disparate treatment argument, respondent contends that there are many statutory exceptions to the imposition of the additional tax under section 72(t) and that there are insufficient facts to ascertain that an exception did

---

[4]The check was for a total of $11,480.79. The pay stub indicated that the distribution amount was $14,305.98, and that $2,870.19 was withheld in Federal taxes. The pay stub further indicated that the "TYPE OF DISTRIBUTION" was "EXMPT [sic] WITHDRAWAL (1)".

not apply to the other Kaiser USWA ESOP participant.[5] On the basis of insufficient facts, respondent argues that it is impossible to determine whether the other Kaiser USWA ESOP participant's and petitioner's situations are factually similar. Furthermore, respondent contends that even if the other Kaiser USWA ESOP participant's situation was factually identical to petitioner's, respondent would not be estopped from determining that a deficiency is due from petitioner because "if respondent made a mistake of law or fact in the other case, he is not estopped from correcting it in this case."

Petitioner also contends that the allocation of Kaiser Cumulative (1985 Series A) Preferred stock was the repayment of a loan (i.e., the sacrifice of wages and benefits by USWA members to Kaiser was a loan that was to be repaid via the Kaiser Cumulative (1985 Series A) Preferred stock). Respondent counters

---

[5]The Court notes that respondent could have verified the reason petitioner's coworker received disparate treatment, including whether an exception pursuant to sec. 72(t) applied, but did not do so. Petitioner credibly testified that an IRS employee instructed petitioner to redact his coworker's name and Social Security number from all documents that petitioner submitted, and petitioner complied. At trial, respondent argued that because the name and Social Security number had been redacted, respondent could not determine who had potentially received disparate treatment and was therefore unable to look into it further. The IRS, and ultimately respondent, had in their possession the documents with the redacted information for years, and could have asked petitioner to resubmit the documents without the pertinent information redacted. Petitioner was willing to provide the name of his coworker, and did so at trial, as well as his coworker's Social Security number.

that petitioner stipulated that he received a distribution from a qualified stock option plan.

Petitioner further argues that he received periodic payments, which the Court interprets to mean that petitioner contends that an exception to section 72(t) applies. Petitioner claims that starting in 1990 he received "periodic payments", specifically testifying that for "the next few contracts [after 1986] we negotiated a little bit of payment of this stock at a time, what I call periodic payments, now and then payments." According to petitioner, these payments continued through 2001. Respondent objects to petitioner's argument on the grounds that petitioner stipulated that none of the exceptions in section 72(t) was applicable.

Respondent cites Rule 91(e) and Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976), for the proposition that the stipulation is a conclusive admission by the parties which they cannot contradict or change except in extraordinary circumstances. Respondent argues that the stipulations conclusively establish that the distribution was from a qualified employee stock option plan and was not subject to any statutory exception to the imposition of the additional tax under section 72(t).

II. Rule 91(e)

Rule 91(e) states that the Court will not allow a signatory to a stipulation to qualify, change, or contradict the

stipulation in whole or in part except where justice otherwise requires. However, small tax cases, such as the instant case, are conducted informally. See Rule 174(b) and (c). Respondent asked petitioner to sign the stipulation of facts at the calendar call and insisted that petitioner should have no objection to the stipulations as the attached exhibits were provided by petitioner. Petitioner expressed concern that he did not have "sufficient time to respond to the stipulation of fact" as he received it days before the calendar call and was unable to discuss its contents with respondent. Petitioner appeared confused regarding the difference between respondent's pretrial memorandum and the stipulation of facts. Erring on the side of informality, the Court will examine petitioner's claims on their merits despite petitioner's contrary stipulations, as petitioner did not appear to fully comprehend the stipulation of facts or its significance.

## III. Section 72(t)

### A. Introduction

If a taxpayer receives a distribution from a "qualified retirement plan", the taxpayer will be subject to an additional 10-percent tax on the amount of the distribution unless an exception enumerated in section 72(t)(2) is applicable. Pursuant to section 4974(c), a "qualified retirement plan" is

> (1) a plan described in section 401(a) which

includes a trust exempt from tax under section 501(a),

(2) an annuity plan described in section 403(a),

(3) an annuity contract described in section 403(b),

(4) an individual retirement account described in section 408(a), or

(5) an individual retirement annuity described in section 408(b).

Such term includes any plan, contract, account, or annuity which, at any time, has been determined by the Secretary to be such a plan, contract, account, or annuity.

Pursuant to section 401(a), a "qualified trust" includes "A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries". An "employee stock ownership plan" (ESOP) includes a stock bonus plan which invests primarily in qualifying employer securities and meets the requirements of section 401(a). Sec. 4975(e)(7).

The Kaiser USWA ESOP is a qualified stock bonus plan, see the Kaiser Aluminum USWA Employee Stock Ownership Plan Summary, supra, and thus is a "qualified retirement plan" pursuant to section 72(t).

B. Exceptions

Section 72(t)(2) provides:

Except as provided in paragraphs (3) and (4), paragraph (1) [which imposes the 10-percent additional tax] shall not apply to any of the following distributions:

(A) In general.--Distributions which are--

(i) made on or after the date on which the employee attains age 59 1/2,

(ii) made to a beneficiary (or to the estate of the employee) on or after the death of the employee,

(iii) attributable to the employee's being disabled within the meaning of subsection (m)(7),

(iv) part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the employee or the joint lives (or joint life expectancies) of such employee and his designated beneficiary,

(v) made to an employee after separation from service after attainment of age 55,

(vi) dividends paid with respect to stock of a corporation which are described in section 404(k), or

(vii) made on account of a levy under section 6331 on the qualified retirement plan.

Petitioner alleges that he received periodic payments and that such distributions are excepted from the section 72(t) additional tax if the payments are substantially equal and made at least annually for petitioner's life (or life expectancy), or the joint lives (or life expectancies) of petitioner and his designated beneficiary. Sec. 72(t)(2)(A)(iv). Petitioner did not present any evidence to substantiate his claim other than his uncorroborated testimony. There is no evidence regarding the

dollar amount or timing of distributions, if any, outside of the 2001 taxable year.  Petitioner's uncorroborated testimony and bare assertions on brief, standing without other admissible evidence, cannot serve to establish that he received periodic annual payments for his life or life expectancy or for the joint lives of himself and his designated beneficiary.  See Rule 143(b).  The Court concludes that the exception enumerated in section 72(t)(2)(A)(iv) is not applicable here.

IV.  Loan

Petitioner argues that the distribution he received in 2001 from the Kaiser USWA ESOP was the repayment of a loan.  A transfer of money will be characterized as a loan for Federal income tax purposes where "at the time the funds were transferred, [there was] an unconditional obligation on the part of the transferee to repay the money, and an unconditional intention on the part of the transferor to secure repayment." Haag v. Commissioner, 88 T.C. 604, 616 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988).  In other words, the parties must intend to create bona fide debt.  "The intention of the parties relates not so much to what the transaction is called, or even what form it takes, as it does to an actual intent that money advanced will be repaid."  Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. T.C. Memo.

1967-102; see <u>Livernois Trust v. Commissioner</u>, 433 F.2d 879, 882 (6th Cir. 1970), affg. T.C. Memo. 1969-111.

Because direct evidence of a taxpayer's state of mind is not generally available, courts have focused on certain objective factors to determine whether a bona fide loan exists: (1) The existence or nonexistence of a debt instrument; (2) provisions for security, interest payments, and a fixed repayment date; (3) whether the parties' records, if any, reflect the transaction as a loan; (4) the source of repayment and the ability to repay; (5) the relationship of the parties; (6) whether any repayments have been made; (7) whether a demand for repayment has been made; and (8) failure to pay on the due date or to seek a postponement. See <u>Smith v. Commissioner</u>, 370 F.2d 178, 180 (6th Cir. 1966), affg. T.C. Memo. 1964-278; <u>Haag v. Commissioner</u>, <u>supra</u> at 616 n.6.

The aforementioned factors are not exclusive, and no one factor is dispositive. See <u>John Kelley Co. v. Commissioner</u>, 326 U.S. 521, 530 (1946); <u>Smith v. Commissioner</u>, <u>supra</u>. The factors are simply objective criteria helpful to the Court in analyzing all relevant facts and circumstances. <u>Geftman v. Commissioner</u>, T.C. Memo. 1996-447, revd. in part on other grounds 154 F.3d 61 (3d Cir. 1998). The ultimate question remains whether "there [was] a genuine intention to create a debt, with a reasonable expectation of repayment, and did that intention comport with the

economic reality of creating a debtor-creditor relationship".
Litton Bus. Sys., Inc. v. Commissioner, 61 T.C. 367, 377 (1973).
Petitioner must prove that a bona fide debt was created and that
the distribution he received in 2001 from the Kaiser USWA ESOP
was the repayment of a loan.  See Rule 142(a); see also sec.
7491(a).

There is evidence that USWA members believed that their
sacrifice of wages and benefits was a loan to Kaiser.  Richard
Williams (Mr. Williams), a witness called by petitioner at trial,
testified that it was not the intention of USWA to create a
qualified stock option plan, but rather to create a form of loan.
However, Mr. Williams further testified that the end result was
the creation of a qualified stock option plan by Kaiser.  In her
December 2, 2005, letter to petitioner Ms. Heritage acknowledged
that USWA "never intended for the stock to [be] part of a
retirement plan."  While Ms. Heritage's letter and the testimony
of petitioner and Mr. Williams all indicate that USWA members
believed they were making a loan to Kaiser, there is no evidence
indicating that Kaiser intended to create a loan.

Furthermore, there is no debt instrument reflecting the
existence of a loan.  There were no provisions made for security,
interest, or a fixed repayment date.  The parties' records do not
make any reference to a loan; rather, the Kaiser Aluminum USWA
Employee Stock Ownership Plan Summary and other documents state

that the Kaiser USWA ESOP was designed to qualify as a stock bonus plan. After weighing all the factors, the Court concludes that the distribution petitioner received from the Kaiser USWA ESOP in 2001 was not the repayment of a loan.

V.   Equitable Estoppel

Petitioner's position regarding the disparate treatment of Kaiser USWA ESOP participants by the IRS is in the nature of an argument for equitable estoppel. "Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations which induced another to act to his detriment.'"  Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982)).

It is well settled, however, that the Commissioner cannot be estopped from correcting a mistake of law, even where a taxpayer may have relied to his detriment on that mistake.  Dixon v. United States, 381 U.S. 68, 72-73 (1965); Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183-184 (1957); see also Massaglia v. Commissioner, 286 F.2d 258, 262 (10th Cir. 1961), affg. 33 T.C. 379 (1959); Zuanich v. Commissioner, 77 T.C. 428, 432-433 (1981). An exception exists only in the rare case where a taxpayer can prove he or she would suffer an unconscionable injury because of

that reliance.[6]  Manocchio v. Commissioner, 78 T.C. 989, 1001 (1982), affd. 710 F.2d 1400 (9th Cir. 1983).  Moreover, "the doctrine of equitable estoppel is applied against the Government 'with the utmost caution and restraint.'"  Kronish v. Commissioner, 90 T.C. 684, 695 (1988) (quoting Boulez v. Commissioner, 76 T.C. 209, 214-215 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987)).

In addition to the traditional elements of equitable estoppel, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie but for section 7463(b), requires the party seeking to apply the doctrine against the Government to prove affirmative misconduct.  Purcell v. United States, 1 F.3d 932, 939 (9th Cir. 1993).  The aggrieved party must prove "'affirmative misconduct going beyond mere negligence,'" and "even then, 'estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the

---

[6]This Court has also held that the Commissioner may not take a position in litigation contrary to the Commissioner's published public guidance in the form of a revenue ruling.  See Rauenhorst v. Commissioner, 119 T.C. 157, 183 (2002).  That situation is quite different from the actions of individual employees, including revenue agents, whose actions are not subject to the national office level review or scrutiny that published rulings are accorded.

liability.'" <u>Purer v. United States</u>, 872 F.2d 277, 278 (9th Cir. 1989) (quoting <u>Wagner v. Dir., Fed. Emergency Mgmt. Agency</u>, 847 F.2d 515, 519 (9th Cir. 1988)).  Affirmative misconduct requires "'ongoing active misrepresentations' or a 'pervasive pattern of false promises' as opposed to an isolated act of providing misinformation." <u>Purcell v. United States</u>, <u>supra</u> at 940.

Petitioner has not met the requirements for equitable estoppel.  It appears that petitioner relied on his coworkers' representations that they were not subject to the section 72(t) additional tax, not on any representations by respondent.  Whether or not some similarly situated taxpayers received inappropriately lenient or favorable tax treatment, this Court has no authority to grant such treatment to petitioner and must enforce the tax laws as written.

VI.  <u>Conclusion</u>

The Court has considered all of petitioner's contentions, arguments, requests, and statements.  To the extent not discussed herein, the Court concludes that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.